Richard HAUGER, Plaintiff-Appellee,

v.

CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, Defendant-Appellant.

No. 11149.

United States Court of Appeals Seventh Circuit.

Oct. 28, 1954.

Thomas I. Megan and Charles F. White, Chicago, Ill., Edward J. Fleming, Laurence R. Lee, Chicago, Ill., O. L. Houts, Chicago, Ill., for appellant.

Wyatt Jacobs, Chicago, Ill., Robert O. Rooney, Joseph B. Lederleitner, Chicago, Ill., for appellee.

Before LINDLEY, SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

In his complaint filed in the District Court, plaintiff alleged, in count I, inter alia, that on January 14, 1953, while employed as a brakeman for the defendant The Grand Trunk Western R. R. Co. (hereinafter referred to as Grand Trunk), he was injured while riding on engine 7921, as it was being operated at or near the junction of track 33 and one of the lead tracks to said track 33 at the south end of the out-freight yard of Chicago, Rock Island and Pacific R. R. Co. (hereinafter referred to as Rock Island), and that as a result of the alleged negligence of Grand Trunk, said engine was caused to collide with a flatcar of Rock Island, crushing plaintiff between said engine and car; wherefore he brought action under the Federal Employer's Liability Act, 45 U.S.C.A. § 51 et seq.

In count II he charged Rock Island with negligently placing or spotting, or projecting or moving said flatcar onto said lead track, whereby he was crushed and injured between said engine and said car; wherefore he sues Rock Island for his alleged damages.

On July 9, 1953, Rock Island's answer was filed, denying, inter alia, that it was negligent.

Plaintiff filed a motion under Rule 34 of the Federal Rules of Civil Procedure,[1] for the entry of an order requiring Rock Island to produce for inspection and copying or photostating, "all statements, either signed or unsigned, and given in the presence of a shorthand reporter" by John J. Armin, William Patrick O'Brien, Clayton William Reed, John Donovan, Paris C. Brock, Richard Dye, William Bobbie Brewer, Milton Scherrick, and Edward Van Nugtren, and "any statements taken from other persons who witnessed the accident * * * or who have knowledge of the placements of flat car No. R I 91439 on track 33, or the braking or blocking of said flat car, or the spacing or coupling of any of the cars on track 33 were before or after this accident."

At the same time an affidavit, by one of plaintiff's attorneys, Robert O. Rooney, was filed, setting forth that during the plaintiff's taking of depositions of various employees of Rock Island, it was developed during the cross-examination of "some of these witnesses" by the attorney for Grand Trunk that they "had, in fact, given signed statements within a day or two of the accident," (although they had under questioning by plaintiff's attorney denied giving signed statements) "which statements contained material and important information and was contradictory to the testimony which the witnesses had previously given when interrogated by affiant as attorney for the plaintiff * * * the material contained in these statements is believed to be very important and necessary, if all of the evidence concerning the manner in which this accident happened is brought to the attention of the jury, and that the plaintiff receive a fair trial."

Pursuant to leave of court, Rock Island filed on December 21, 1953, objections to the foregoing motion, and thereby urged, inter alia, that "there is no

---

1. Rule 34, 28 U.S.C.A.

showing of good cause for the production of any of the alleged documents." On December 23, 1953, plaintiff filed a motion, which in effect amended the prior motion by adding paragraphs 10 and 11, adding Exo and Veltick to the nine names originally stated, and Rock Island was given leave to file additional objections.

The court having striken that part of the motions pertaining to statements other than those of the specifically named persons, Rock Island, on January 4, 1954, filed additional objections on the grounds, inter alia, that (1) plaintiff had taken the depositions of all of the persons listed; (2) there was no showing of good cause for the production; (8) there was no showing that the persons listed are not readily available to plaintiff or that plaintiff has been unable to question said persons or has used or exercised reasonable diligence to do so, or that any other special circumstances exist; (10) or that they were necessary to enable plaintiff to prepare his case or that they will facilitate proof or aid in the progress of this cause; (11) "there is no affirmative showing that any special circumstances exist which justify this attempt by the plaintiff's attorney to take advantage of the defendant's industry and diligence in preparing its own case for trial;" and (12) "the affidavit attached to plaintiff's original motion, which was identical with the present motion except for paragraphs 10 and 11 thereof which are new, is inaccurate and incoherent and fails to affirmatively allege or set forth any facts justifying the production of any of the alleged documents listed in said motion. Said affidavit contains only the unsupported conclusions and opinions of the attorney for the plaintiff, and is totally insufficient in law to support said motion. * * * "

On January 8, 1954, plaintiff filed a reply to the objections of Rock Island. Among other things it stated that the motion plaintiff presented on December 17, 1953, was made "subsequent to the taking of depositions of" Rock Island "employees and after it was determined in the depositions that said documents were actually in existence and in the possession of" Rock Island; that "the documents were used by the attorney for" Grand Trunk "in laying a foundation for impeachment of the various witnesses," the documents being statements signed by the witnesses, and taken by the Rock Island two days after the accident "which statements were impeaching of the testimony given by the witnesses in response to interrogatories propounded to them by the attorney for the plaintiff; these documents had been given to" Grand Trunk by Rock Island; they "are contradictory and impeaching on vital and material issues in the case and are thus relevant"; " * * * it affirmatively appears in the testimony at the depositions that the statements are impeaching concerning the placement of cars on track 33 both before and after the accident, the bracing of the cars, and other relevant matters; it also appears in the depositions that the various witnesses were not shown their statements prior to the taking of their depositions by the plaintiff, and they were not permitted to refresh their memories from the said statements; when these witnesses had been asked by the attorney for the plaintiff whether or not they had given statements, each of the witnesses denied that they had; the motion and affidavit affirmatively show that the statements sought by the plaintiff herein are impeaching of the testimony given by the witnesses on a direct examination and thus are necessary to enable this plaintiff to prepare this case, that they will facilitate proof and that they will aid the jury in arriving at the truth of the matter sought to be hidden by" Rock Island.

On January 19, 1954, after a hearing the court entered an order directing Rock Island to produce the statements of the eleven persons mentioned, in accordance with the two motions of plaintiff.

On February 4, 1954, plaintiff filed a motion for an order directing Rock Island to show cause why it should not be held in contempt of court for its failure to comply with the order of January 18,

1954. At that time there was filed the affidavit of Mr. Rooney alleging that Rock Island produced the statements of only three of the persons named, i. e., Brewer, Van Nugtren and Scherrick, and refused to produce the other statements. On the same day the court entered an order for a rule to show cause, and gave leave to file counter-affidavits.

On February 8, 1954, Rock Island filed an answer to the rule with an affidavit of Charles F. White, its attorney. In the answer, it stated that it had produced the statements signed by Brewer, Scherrick and Van Nutgren (sic), that it did not have in its possession statements "within the meaning of the order," of Reed and Veltick; that the order of January 19, 1954 was an improper order, "was not supported by sufficient showing of good cause as required by Rule 34, constituted an abuse of discretion by the court, and was grossly in violation of" Rock Island's "fundamental rights." Defendant incorporated by reference all objections previously filed by it.

Affiant White said that he is attorney for Rock Island and that Rooney's affidavit "is inaccurate and misleading;" and set forth, inter alia, that defendant had produced copies of statements signed by Brewer, Sherrick and Van Nutgren (sic) which were those used by Grand Trunk counsel at the depositions of these three men; that the other statements which the order required defendant to produce were not used to impeach or cross-examine the witnesses at their respective depositions; that Rock Island does not have in its possession any statements by Reed or Veltick; that plaintiff has taken the depositions of Armin, O'Brien, Reed, Donovan, Brock, Dye, Brewer, Sherrick, Exo, Van Nutgren (sic), and Veltick, all of whom have been available to plaintiff.

The record contains an affidavit sworn to by Laurence R. Lee, one of the attorneys for Rock Island, under date of February 24, 1954, in which he stated that O'Brien, Donovan, Brock, Dye, Van Nutgren, Sherrich and Exo did not deny giving statements to Rock Island when giving their depositions.

On February 25, 1954, an order was entered adjudging Rock Island guilty of criminal contempt of court and fining it $200. On February 25, 1954, notice of appeal was filed by Rock Island.

As stated by Rock Island, the contested issues are:

1. Whether plaintiff made a showing of good cause sufficient to justify the entry of the order on defendant to produce certain documents.

2. Whether plaintiff should have been convicted of criminal contempt of the United States District Court because of its resistance to and refusal to obey fully such an order.

In this court no contention is made by Rock Island that the statements in question were privileged or that their contents were not relevant to the issues raised by the pleadings. However, it does insist that plaintiff made no showing of good cause for the entry of the order for production of the statements of Armin, O'Brien, Donovan, Brock, Dye and Exo. To that contention the court now addresses itself.

The burden was upon plaintiff to demonstrate to the court from the facts appearing in the record that good cause existed, as required by Rule 34 [2] for

2. Rule 34 Federal Rules of Civil Procedure, 28 U.S.C.A.:
"Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody, or control; or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the

the production of said statements by Rock Island. Alltmont v. United States, 3 Cir., 177 F.2d 971, at page 975. Attempting to sustain that burden, plaintiff showed that he took pre-trial depositions of eleven employees of Rock Island, three of whom (under cross-examination by counsel for Grand Trunk, a co-defendant who has filed a cross-complaint against Rock Island) admitted that they had given to Rock Island in written statements a version of the accident different from that to which they testified on the deposition under interrogation by plaintiff's counsel. This impeachment of these three witnesses by Grand Trunk's attorney, to whom the statements had been delivered by Rock Island's counsel, was followed by the delivery to plaintiff's counsel of the statements of these three witnesses by Rock Island's attorney. As to the witnesses Reed and Veltick, counsel for Rock Island stated that there were no statements. Plaintiff does not press the matter as to them and we therefore consider only the remaining six employees. As to them there was no impeachment of their testimony taken on their depositions.

The foregoing are the only significant facts in the record relevant to a determination of whether good cause was shown by plaintiff for the entry of the order for production.

Plaintiff's contention, as stated in his brief, is that the fact that the mutual adversary did not see fit to use the other statements to impeach the other deponents did not warrant the conclusion that if the said other statements were impeaching they would have been so used, since that would be true only on points where the interests of the plaintiff and the co-defendant were the same by reason of the cross-claim; that even though the documents may have been described in general terms, the criterion of materiality was broader before, than at time of trial, and the documents, having been found to be material by a co-defendant and cross-claimant, are reasonably likely to be material for a plaintiff; that the plaintiff has thus shown good cause for production of the said statements.

 A court is not justified in ordering production of documents simply on the theory that the facts sought are material and are not privileged. Hickman v. Taylor, 329 U.S. 495, at page 509, 67 S.Ct. 385, 91 L.Ed. 451. Production of documents will not be ordered merely to help counsel to prepare himself to examine witnesses and to make sure he has overlooked nothing. Hickman v. Taylor, supra, 329 U.S. at page 513, 67 S.Ct. 385.

There is no showing that the statements demanded are inconsistent in any way with the testimony given by the makers of those statements when they testified in giving their depositions. There is no showing that they were even asked by any attorney about the contents of any statements given by them to Rock Island. In substance plaintiff argues that, inasmuch as it was revealed at the taking of depositions that three of the witnesses had given statements to Rock Island which were impeaching of their testimony on the depositions, a court would conclude that the testimony of the six witnesses whose statements are now being discussed also would be impeached by their respective statements, if produced for inspection. This is equivalent to saying that where it was shown that three witnesses out of a group of nine lied, the other six must have also lied. Obviously there is no reasonable basis for such a deduction. If there is any presumption it is in favor of veracity rather than perjury. In the absence of any showing that the missing statements would impeach the witnesses who made them, we have before us a simple situation of a plaintiff, who, to assist himself in preparing his case, wishes to examine statements obtained by his adversary in preparing for its defense. These state-

property or any designated object or operation thereon within the scope of the examination permitted by Rule 26(b). The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."

ments were obtained by Rock Island in order to permit its attorneys to prepare its defense. Such a situation arose in Alltmont v. United States, 3 Cir., 177 F.2d 971, where plaintiff sought an order for production of statements of witnesses procured by defendant's agents. At 976 of 177 F.2d the court said:

"While the language of the Supreme Court was here necessarily directed to statements obtained personally by Fortenbaugh as counsel for the adverse party, since only such statements were involved in the Hickman case, we think that its rationale has a much broader sweep and applies to all statements of prospective witnesses which a party has obtained for his trial counsel's use. For since, as the Court held, statements of prospective witnesses obtained by a lawyer are not protected by the historic privilege inherent in the lawyer-client relationship and are only protected against disclosure if the adverse party cannot show good cause for their production, we can see no logical basis for making any distinction between statements of witnesses secured by a party's trial counsel personally in preparation for trial and those obtained by others for the use of the party's trial counsel. * * * In either situation, the rationale of the opinion of the Supreme Court in the Hickman case requires that the same showing of good cause for the production of such statements of witnesses should be made by the adverse party seeking copies of them. This necessarily means that their production is to be had under Civil Procedure Rule 34 (or Admiralty Rule 32) upon a showing of good cause rather than as a matter of right under Civil Procedure Rule 33 (or Admiralty Rule 31)."

And at page 978 of 177 F.2d, the court in referring to counsel seeking production of such statements, said:

"In other words he must show that there are special circumstances in his particular case which make it essential to the preparation of his case and in the interest of justice that the statements be produced for his inspection or copying. His counsel's natural desire to learn the details of his adversary's preparation for trial, to take advantage of his adversary's industry in seeking out and interviewing prospective witnesses, to help prepare himself to examine witnesses or to make sure that he has overlooked nothing are certainly not such special circumstances since they are present in every case."

The court reversed an order requiring such statements to be produced.

In Martin v. Capital Transit Co., 83 U. S.App.D.C. 239, 170 F.2d 811, which was a suit for damages brought by plaintiff for injuries sustained by him and alleged to have been caused through the negligent operation of defendant's streetcar, the motion by plaintiff for an order on defendant to produce for inspection and copying a written report of the accident made by the motorman, was denied. Upon appeal there was an affirmance. The motion alleged that in a deposition the motorman testified that he made a written report to the defendant immediately following the accident. The record on appeal showed that two days after the accident the motorman was suspended from duty upon the ground that the accident was avoidable and that on that account he resigned from his position. The court said in 170 F.2d at page 814:

"It is urged by the appellant that from these excerpts good cause for the production of the Davis report was shown. The argument is that if Davis' written statement were consistent with his deposition, the appellee would probably not have suspended him from duty, from which it is apparently concluded that the court ought to have inferred that the purpose of the motion to produce was that of using the report as a foundation for cross-examination or impeachment. But it was not the duty of the District Court to search

out a 'good cause' for the production of the report. It was the duty of the appellant explicitly to show in his motion or by a supporting affidavit the need of the report for the purposes of the trial."

In Hudalla v. Chicago, M. S. P. & P. R. Co., D.C., 10 F.R.D. 363, which was a proceeding by plaintiff under the federal employer's liability act for personal injuries sustained during his employment by defendant, plaintiff moved for an order on defendant under Rule 34 to permit him to inspect a statement given by one John Peterson, the only eyewitness to the accident. The court said in 10 F.R.D. at page 364:

"Presumably, the testimony of John Peterson is available to plaintiff. His deposition may be taken. The Court cannot presume that the statement given will be at variance with the testimony which may be adduced by way of a deposition. * * * True, the possession of Peterson's statement may be helpful to plaintiff in cross-examination or by way of impeachment, but presumably the deposition of the witness may afford plaintiff similar opportunity. The time when Peterson's statement was taken does not appear on this showing. In any event, the sheer conclusions stated in the affidavit of counsel in support of the motion and the absence of any showing of special or exceptional circumstances which should move the Court to exercise his judgment require a denial thereof."

■ There are no special circumstances to distinguish the case at bar from the ordinary situation, where a lawyer would like to examine statements of witnesses procured by the opposing party. The presence of special circumstances might, of course, constitute good cause for the entry of an order to produce such statements for examination. Such a case is Reynolds v. United States, 3 Cir., 192 F.2d 987. In the three consolidated suits there involved, the plaintiffs were the widows of deceased civili-

an employees of the United States, and were each seeking damages for the allegedly wrongful deaths of their husbands, who lost their lives when a United States Air Force bomber carrying them and other persons, crashed while on a flight for the purpose of an experimental testing of secret electronics equipment. Plaintiffs made a motion under Rule 34 for production of the official investigation report prepared by officers of the Air Force and the statements of the surviving crew members taken in connection with that investigation. To show good cause the motion and supporting affidavits stated that those documents constituted or contained information and evidence necessary in preparation for trial, that the documents were in the possession and control of the United States and that plaintiffs knew no way to obtain knowledge of their contents or the cause of the accident other than by their production. The motion was granted. At page 991 of 192 F.2d the court, in affirming, said:

"In concluding that good cause had been shown, the district judge said, [Brauner v. U. S., D.C.] 10 F. R.D. 468, 470–471: 'The plaintiffs have no knowledge of why the accident happened. So far as such knowledge is obtainable, the defendant has it. When the airplane crashed, it was wrecked and much of the evidence of what occurred was destroyed. Only persons with long experience in investigating airplane disasters could hope to get at the real cause of the accident under such circumstances. The Air Force appointed a board of investigators immediately after the accident and examined the surviving witnesses while their recollections were fresh. With their statements as a starting point the board was able to make an extensive investigation of the accident. These statements and the report of the board's investigation undoubtedly contain facts, information and clues which it might be extremely difficult, if not impossible, for the

plaintiffs with their lack of technical resources to obtain merely by taking the depositions of the survivors. * * * ' "

In contrast, in the case at bar the injured person is living, and is a railroad man by occupation, and plaintiff's attorney may consult personally with him as to the general railroad operations involved in this case. There is no contention that, as a practical matter, plaintiff's attorney would find it virtually impossible to make any independent investigation of the cause of the accident, as was the situation in the Reynolds case. No technical questions involving locomotives or equipment appear to be involved in this case. There was simply a collision between a diesel engine and a flatcar. An investigation called for no esoteric technical knowledge.

■■ The situation surrounding the six statements of witnesses, now under consideration, is no different from that existing in the ordinary case where one litigant, in the course of preparation for trial, has secured statements of witnesses which the opposing party's lawyer would like to read. Even though that lawyer hopes or believes, based upon guess, conjecture or suspicion, that a reading of the statements would reveal a basis for impeachment, or give him other valuable information, it has never been the practice of courts generally to require the production of such statements under such circumstances. The courts have traditionally left a lawyer to his own industry aided by the use of depositions, interrogatories and subpoenas. A court is not justified in ordering a litigant to permit his adversary to inspect witness statements, which he has procured in preparing for trial, upon the adversary's mere surmise or suspicion that he might find impeaching material in the statements. In such a situation the rights of a litigant in the work-product of his lawyers and agents are not required to give way to an adversary's right of discovery. Hickman v. Taylor, and Alltmont v. United States, supra. A construction at this time extending the scope

of Rule 34 to cover such a situation, which is commonplace in thousands of pending cases, both at law and equity, would be not only unjustified by the provisions of that rule but would also be a startling innovation, which, in no small measure, would revolutionize the practice of law in the federal courts. In the absence of language in Rule 34 clearly indicating such a drastic change in the settled methods of the practice of the law, we are unwilling to startle the members of the bar by the announcement of the interpretation suggested by plaintiff.

Accordingly, the order of the District Court appealed from, is reversed.