**CARPENTER–TRANT DRILLING COMPANY, a corporation, Plaintiff,**

v.

**MAGNOLIA PETROLEUM CORPORATION, a corporation, Defendant.**

**Civ. No. 0591.**

United States District Court
D. Nebraska.
April 15, 1959.

M. M. Maupin, Maupin, Dent, Kay & Satterfield, North Platte, Neb., for plaintiff.

Milton C. Murphy, Beatty, Clarke, Murphy & Morgan, North Platte, Neb., for defendant.

VAN PELT, District Judge.

Plaintiff was a driller of oil wells, and contracted to drill a well for the defendant. The defendant was to supply, and have control over the composition of, the "mud" which was used in connection with the drilling. One of the purposes of the mud is alleged to be that of sealing off and protecting the wall of the hole being drilled and to prevent the wall from caving in. Plaintiff complains that the defendant was negligent in that the mud furnished did not contain a proper admixture of salt. As a result, plaintiff alleges that it was damaged because the walls of the hole caved in, causing plaintiff not only expense in fishing out its drilling equipment but other expense as well.

The defendant has moved for the production of certain documents. Specifically, it has asked for three memorandum reports from Mr. George H. Reneau, which are described as to date and page length. Further, defendant requests: "Any and all reports from Mr. Daniel Turner."

Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides:

"Upon motion of any party showing *good cause* therefor and upon notice to all other parties, * * * the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, *not privileged,* which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26 (b) and which are in his possession, custody, or control; * * *" (Emphasis supplied.)

Judge Switzer, in the case of Herbst v. Chicago, Rock Island & Pacific R. Co., D.C.Iowa 1950, 10 F.R.D. 14, 17 analyzed the requirements of the rule, concluding that it placed upon the moving party:

"the affirmative burden of establishing the following:

"(1) That there is 'good cause' for the production and inspection of the desired material.

"(2) The material requested must be 'designated' with reasonable definiteness and particularity.

"(3) The material must not be privileged.

"(4) The material must constitute or contain evidence relating to matters within the scope of the examination permitted by Rule 26(b), i. e., it must be 'relevant to the subject matter involved in the pending action' and 'appears reasonably calculated to lead to the discovery of admissible evidence.'

"(5) The material must be within the possession, custody or control of the party upon whom the demand is made."

Since no point is made by plaintiff as to the sufficiency of the showing on points (2), (4) and (5) outlined by Judge Switzer, the Court concludes not to place its ruling on any of these grounds.

The matter of privilege was mentioned in the argument and should have brief comment by the Court.

The motion does not make any allegation concerning privilege. The affidavit of defendant's counsel, however, states: "It is the defendant's contention that no privilege exists in relation to these documents and the defendant is entitled to inspect and copy each of said documents." The movant has produced no underlying facts to support its allegation of non-privilege, but the Court is convinced from examining the memoranda that they are not privileged. For clarification, it should be stated that the Court is here referring to the attorney-client privilege, and makes no reference at this point to attorney's "work-product" which is sometimes erroneously described as "privileged." The term "not privileged", "as used in Rule 34, refers to 'privileges' as that term is understood in the law of evidence." United States v. Reynolds, 1952, 345 U.S. 1, 6, 73 S.Ct. 528, 531, 97 L.Ed. 727. The Supreme Court plainly stated that attorney's work product is not "privileged" in the technical sense of attorney-client privilege, and under an appropriate showing of good cause can be discovered. The Court, in Hickman v. Taylor, 1946, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451, stated:

"We also agree that the memoranda, statements and mental impressions in issue in this case fall outside the scope of the attorney-

client privilege and hence are not protected from discovery on that basis. * * * For present purposes, it suffices to note that the protective cloak of this privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories."

As to discovery of "work product" the court stated at page 511, of 329 U.S. at page 394, of 67 S.Ct.:

"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty."

The plaintiff on its own motion, by way of objection to the defendant's motion to produce, has submitted to the Court the reports requested by defendant's motion, for examination by the Court in camera. It is plaintiff's contention that the reports are the work product of plaintiff's counsel. An affidavit supporting plaintiff's claim has been filed.

Counsel of record for plaintiff are Messrs. M. M. Maupin of North Platte, Nebraska, and W. Richard Means of Denver, Colorado. George Howard Reneau is a petroleum engineer. He was formerly an employee for plaintiff and in that capacity did some work on the well in question. He was subsequently retained as an independent expert. It is stated: "That the said George Reneau terminated his employment with the plaintiff company prior to the time that the controversy involved in this action arose." Mr. Daniel Turner is a consultant geologist who has no connection with the case except in his capacity as an expert assisting plaintiff's counsel. Mr. Means was counsel prior to the time of the retention of Mr. Maupin as additional counsel.

Means arranged for the employment of Reneau as an expert to aid and assist counsel in the preparation of this action and requested Reneau to prepare, in writing, technical reports for the use of counsel in representing the plaintiff in this controversy with the defendant.

About the time Mr. Maupin was retained as counsel, Mr. Turner was also retained as consultant geologist to render technical advice to plaintiff, and to plaintiff's counsel. The affidavit continues that Messrs. Means and Maupin have from time to time conferred with Turner and have requested him to prepare in writing, memoranda covering the technical aspects of this litigation within the field of the specialty of Mr. Turner. One of Reneau's memoranda was also prepared after the retention of Maupin, and was prepared at the joint request of Means and Maupin. These written reports of Turner and Reneau are the ones sought and described in defendant's motion.

The Court, lest it violate the confidence reposed in it by counsel, makes no reference to the nature of the reports although one report has been provided Mr. Murphy and from it he may have correctly concluded as to the nature of the

others. After reviewing the reports requested, the Court is of the opinion that most of the reports contain the type of material which falls within the doctrine of Hickman v. Taylor, 1946, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. The Court said at page 497, of 329 U.S. at page 387, of 67 S.Ct.:

"Examination into a person's files and records, including those *resulting from* the professional activities of an attorney, must be judged with care. It is not without reason that various safeguards have been established to preclude unwarranted excursions into the privacy of a man's work." (Emphasis supplied.)

The Court continued at page 511, of 329 U.S. at page 393, of 67 S.Ct.:

"Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case * * * as the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the in-

terests of the clients and the cause of justice would be poorly served."

■ This Court is aware that the facts in the Hickman case were not the same as in the case at bar. In that case, request was made for the production of signed statements taken by counsel, plus counsel's recollection of oral statements made to counsel, plus all other records, memoranda, etc. which had been prepared relative to the case. This Court, however, feels that when experts in an extremely technical field have been retained to advise counsel in the case as to proper technical interpretation of certain facts, and of the state of technical information, that this partakes of the counsel's work product. The same protection accorded to lawyers' other work as necessary to "prepare his legal theories and plan his strategy without undue and needless interference" (Id. at page 511, 67 S.Ct. at page 393) must be accorded to his technical information and strategy in the use of experts.

Counsel have not cited, nor has the Court found, binding authority from this Circuit relative to whether such expert memoranda is properly "work product." In the case of Wilson v. Capital Airlines, D.C.N.C., 1956, 19 F.R.D. 263 (see, also 4 Cir., 240 F.2d 492), the defendant moved for inspection of certain letters from plaintiff's physicians to plaintiff's counsel. The court said 19 F.R.D. at page 264:

"these letters are in the nature of statements by prospective witnesses, obtained by plaintiff's counsel upon his own initiative, and in connection with the institution of this cause and its preparation for trial."

The court then applied the work product test, quoting from the Hickman case, and found insufficient good cause. Discovery was denied.

In another case, there was apparently in issue an alleged defect in an automobile. The plaintiff's expert had disassembled the car and made a written report to counsel. The court ordered the

report to be shown to defendant, finding the situation to be one of the "rare situations having exceptional features" referred to in the Hickman case. The car having been disassembled, the defendant had no opportunity to obtain the same information as the plaintiff's expert had obtained. Colden v. R. J. Schofield Motors, D.C.Ohio, 1952, 14 F.R.D. 521, 522. But see also the cases of Walsh v. Reynolds Metals Co., D.C.N.J., 1954, 15 F.R. D. 376, and Julius Hyman & Company v. American Motorists Insurance Company, D.C.Colo., 1955, 17 F.R.D. 386. In those cases an expert investigation had been made, but not at the request of counsel, of certain machinery. In the former, a propane gas stove had allegedly exploded, and in the latter, certain accidental damage had allegedly occurred to a boiler. The experts disassembled the machinery and submitted a report including their factual findings plus subjective opinions concerning causation, liability, and settlement. The courts permitted the discovery of the factual findings of the experts, but denied access to the subjective findings, conclusions and suggestions. Although not terming the reports the work product of a lawyer, because not made at a lawyer's request, it is evident that the policy inherent in the Hickman case that one party ought not get the benefits of the other's labors, in the absence of good cause, was effectuated there. The court in the Walsh case, supra, stated at page 378, of 15 F.R.D.: "Nor is plaintiff at all prejudiced in preparation for trial by the lack of such expert conclusion. *He can obtain his own expert conclusion,* upon the basis of the objective facts doubtless contained in the report in question, and of course, if such facts do not so appear, this court is still open." (Emphasis supplied.)

In the case of United States v. Certain Parcels of Land, Etc., D.C.Cal., 1953, 15 F.R.D. 224, 235 the condemnees were permitted to discover the factual basis of an appraisers' opinion, but they were not permitted to discover the opinion. Even though such reports were made under attorney's supervision, they were not deemed the attorney's "work product" (a position with which this Court finds itself in disagreement), but the court felt the appraisers had a property right in their opinion. The court felt it should protect the appraisers' opinion, "since such protection does not impede any *legitimate* objective of the parties at bar." (Emphasis supplied.)

In the case of Smith v. Washington Gas Light Co., D.C.D.C., 1948, 7 F.R.D. 735 a memorandum prepared at the request of a claim agent by an employee Safety Engineer some time after an accident (gas explosion) was held not obtainable. The court stated:

> "The application for the Leonard memorandum of March 31, 1947, is denied as having been prepared some months after the accident and the investigation thereof and subsequent to the institution of the suit. It was prepared by him for use of counsel and is therefore privileged. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385 [91 L.Ed. 451] * * * *"

While this Court believes that the term "privilege" is not here appropriate for the reasons set forth above, the Court is in accord with the Smith case in that such memorandum prepared by an expert to assist counsel in the suit is entitled to the same protection as the other results of a lawyer's efforts. These reports may be produced—but only on a strong showing of cause.

Under the rationale of the Hickman case, it is the opinion of this Court that a blanket request for the reports which an expert has submitted to counsel in preparation of the case for trial is a request for the attorney's work product. The Court does not believe that the attorney for one party should be entitled to the fruits of his opponent's labor in this regard without a strong showing of good cause.

This Court has quoted above the instances set forth in the Hickman case when discovery of work product might be justified. In the case of Helverson v. J. J. Newberry Company, D.C.Mo., 1954, 16 F.R.D. 330, 333, Judge (now Justice) Whittaker, after reviewing the Hickman case in detail determined that a showing of necessity to avoid undue prejudice must be made to reach witness statements taken in the course of investigation. He stated:

"The conclusion is inescapable from this language that the words 'good cause', as used in Rule 34, are held by the Supreme Court to mean 'necessity' or something bordering thereon, in order to avoid 'undue' prejudice. And that, in a case like this, to repeat the words of the Supreme Court 'production [of such written statements] might be justified where the witnesses are no longer available or can be reached only with difficulty.'

"From this it has to follow that 'good cause'—that is to say 'necessity' to avoid 'undue' prejudice—for the production by an adversary of the statements he has taken from witnesses, is not shown where it appears that the witnesses are still available and can be reached without difficulty."

■ The mere hope that the defendant might be able to use these reports to impeach the experts is not sufficient good cause. As was stated in Hauger v. Chicago, Rock Island & Pacific Railroad Co., 7 Cir., 1954, 216 F.2d 501, 508:

"A court is not justified in ordering a litigant to permit his adversary to inspect witness statements, which he has procured in preparing for trial, upon the adversary's mere surmise or suspicion that he might find impeaching material in the statements. In such a situation the rights of a litigant in the work-product of his lawyers and agents

are not required to give way to an adversary's right of discovery."

See, also, Hickman v. Taylor, supra; and Alltmont v. United States, 3 Cir., 1949, 177 F.2d 971, certiorari denied 339 U.S. 967, 70 S.Ct. 999, 94 L.Ed. 1375. Of course, if the moving party can demonstrate that he has reasonable ground to believe that impeaching material is in fact contained in a statement, then the statement may be reached. United States v. Great Northern Ry. Co., D.C. Cal., 1955, 18 F.R.D. 357.

■ The mere fact that a party doesn't know what is in the report in his opponent's possession is certainly not good cause to see it. This has been so held in a case where just the usual "good cause" under Rule 34 was involved, and not the good cause necessary to inspect an attorney's files. McCaffrey v. United States, D.C.N.Y., 1952, 13 F.R.D. 512.

This Court is aware that much of its opinion concerning good cause is largely hypothetical. The defendant has already taken the deposition of George H. Reneau. It is not alleged that he was a hostile witness or was in any manner uncooperative in telling what he knew except that he "refused to produce the certain documents referred to in attached motion * * *." In the case of Hudalla v. Chicago, M., St. P. & P. R. Co., D.C. Minn., 1950, 10 F.R.D. 363, 364, Judge Nordbye refused to grant a motion for discovery of statements when the only cause shown was that material statements were in the defendant's possession, were not in the plaintiff's possession or accessible to him, and that " 'plaintiff cannot properly and adequately prepare said cause for trial or safely proceed to trial unless this motion is granted * * *.' " From the opinion it is evident that the court placed great weight on the fact that only stereotyped conclusions without underlying facts were given to show good cause. In the case at bar, the defendant has not alleged anywhere that it needs these documents to prepare for trial—much less

has it produced any underlying facts to show wherein it will be prejudiced if it doesn't get them.

■ For aught that appears, and this is in no manner critical of counsel, the defense is merely asking for the materials to use as a checklist so that it won't miss anything. As was stated in Hauger v. Chicago, Rock Island & Pacific Railroad Co., 7 Cir., 1954, 216 F.2d 501, 505:

> "Production of documents will not be ordered merely to help counsel to prepare himself to examine witnesses and to make sure he has overlooked nothing."

It may be that the plaintiff has documents which are the subject of discovery. For example, if the plaintiff has drilling reports or logs when the well in question was drilled, and the defendant does not have such reports or logs, then the defendant ought to be able to get this factual data, even though it be in the files of plaintiff's attorney. But here the defendant has made a blanket request for reports submitted by two experts. Defendant has already taken the deposition of Reneau and it is stated in plaintiff's affidavit that both Reneau and Turner are available in Denver, Colorado, for further interrogation at convenient times and places if requested by the defendant.

The language of Judge Delehant in the case of Fey v. Stauffer Chemical Company, D.C.Neb., 1956, 19 F.R.D. 526, 529, is appropriate:

> " * * * [the moving party] has made out no case adequately to support his right to what he has demanded; and his position is to be appraised by the demand he has made, not by some less comprehensive request which he might have tendered."

The Court sustains the objections to the motion for production of documents. An appropriate order will this day be entered.