# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 7, 2014            Decided June 27, 2014

No. 14-5055

IN RE: KELLOGG BROWN & ROOT, INC., ET AL.,
PETITIONERS

———

On Petition for Writ of Mandamus
(No. 1:05-cv-1276)

———

*John P. Elwood* argued the cause for petitioners. With him on the petition for writ of mandamus and the reply were *John M. Faust*, *Craig D. Margolis*, *Jeremy C. Marwell*, and *Joshua S. Johnson*.

*Rachel L. Brand*, *Steven P. Lehotsky*, *Quentin Riegel*, *Carl Nichols*, *Elisebeth C. Cook*, *Adam I. Klein*, *Amar Sarwal*, and *Wendy E. Ackerman* were on the brief for amicus curiae Chamber of Commerce of the United States of America, et al. in support of petitioners.

*Stephen M. Kohn* argued the cause for respondent. With him on the response to the petition for writ of mandamus were *David K. Colapinto* and *Michael Kohn*.

Before: GRIFFITH, KAVANAUGH, and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: More than three decades ago, the Supreme Court held that the attorney-client privilege protects confidential employee communications made during a business's internal investigation led by company lawyers. *See Upjohn Co. v. United States*, 449 U.S. 383 (1981). In this case, the District Court denied the protection of the privilege to a company that had conducted just such an internal investigation. The District Court's decision has generated substantial uncertainty about the scope of the attorney-client privilege in the business setting. We conclude that the District Court's decision is irreconcilable with *Upjohn*. We therefore grant KBR's petition for a writ of mandamus and vacate the District Court's March 6 document production order.

I

Harry Barko worked for KBR, a defense contractor. In 2005, he filed a False Claims Act complaint against KBR and KBR-related corporate entities, whom we will collectively refer to as KBR. In essence, Barko alleged that KBR and certain subcontractors defrauded the U.S. Government by inflating costs and accepting kickbacks while administering military contracts in wartime Iraq. During discovery, Barko sought documents related to KBR's prior internal investigation into the alleged fraud. KBR had conducted that internal investigation pursuant to its Code of Business Conduct, which is overseen by the company's Law Department.

KBR argued that the internal investigation had been conducted for the purpose of obtaining legal advice and that

the internal investigation documents therefore were protected by the attorney-client privilege. Barko responded that the internal investigation documents were unprivileged business records that he was entitled to discover. *See generally* Fed. R. Civ. P. 26(b)(1).

After reviewing the disputed documents *in camera*, the District Court determined that the attorney-client privilege protection did not apply because, among other reasons, KBR had not shown that "the communication would not have been made 'but for' the fact that legal advice was sought." *United States ex rel. Barko v. Halliburton Co.*, No. 05-cv-1276, 2014 WL 1016784, at *2 (D.D.C. Mar. 6, 2014) (quoting *United States v. ISS Marine Services, Inc.*, 905 F. Supp. 2d 121, 128 (D.D.C. 2012)). KBR's internal investigation, the court concluded, was "undertaken pursuant to regulatory law and corporate policy rather than for the purpose of obtaining legal advice." *Id.* at *3.

KBR vehemently opposed the ruling. The company asked the District Court to certify the privilege question to this Court for interlocutory appeal and to stay its order pending a petition for mandamus in this Court. The District Court denied those requests and ordered KBR to produce the disputed documents to Barko within a matter of days. *See United States ex rel. Barko v. Halliburton Co.*, No. 05-cv-1276, 2014 WL 929430 (D.D.C. Mar. 11, 2014). KBR promptly filed a petition for a writ of mandamus in this Court. A number of business organizations and trade associations also objected to the District Court's decision and filed an amicus brief in support of KBR. We stayed the District Court's document production order and held oral argument on the mandamus petition.

The threshold question is whether the District Court's privilege ruling constituted legal error. If not, mandamus is of course inappropriate. If the District Court's ruling was erroneous, the remaining question is whether that error is the kind that justifies mandamus. *See Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 380-81 (2004). We address those questions in turn.

II

We first consider whether the District Court's privilege ruling was legally erroneous. We conclude that it was.

Federal Rule of Evidence 501 provides that claims of privilege in federal courts are governed by the "common law – as interpreted by United States courts in the light of reason and experience." Fed. R. Evid. 501. The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). As relevant here, the privilege applies to a confidential communication between attorney and client if that communication was made for the purpose of obtaining or providing legal advice to the client. *See* 1 RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §§ 68-72 (2000); *In re Grand Jury*, 475 F.3d 1299, 1304 (D.C. Cir. 2007); *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998); *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984); *see also Fisher v. United States*, 425 U.S. 391, 403 (1976) ("Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged.").

In *Upjohn*, the Supreme Court held that the attorney-client privilege applies to corporations. The Court explained that the attorney-client privilege for business organizations

was essential in light of "the vast and complicated array of regulatory legislation confronting the modern corporation," which required corporations to "constantly go to lawyers to find out how to obey the law, . . . particularly since compliance with the law in this area is hardly an instinctive matter." 449 U.S. at 392 (internal quotation marks and citation omitted). The Court stated, moreover, that the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390. That is so, the Court said, because the "first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Id.* at 390-91. In *Upjohn*, the communications were made by company employees to company attorneys during an attorney-led internal investigation that was undertaken to ensure the company's "compliance with the law." *Id.* at 392; *see id.* at 394. The Court ruled that the privilege applied to the internal investigation and covered the communications between company employees and company attorneys.

KBR's assertion of the privilege in this case is materially indistinguishable from Upjohn's assertion of the privilege in that case. As in *Upjohn*, KBR initiated an internal investigation to gather facts and ensure compliance with the law after being informed of potential misconduct. And as in *Upjohn*, KBR's investigation was conducted under the auspices of KBR's in-house legal department, acting in its legal capacity. The same considerations that led the Court in *Upjohn* to uphold the corporation's privilege claims apply here.

The District Court in this case initially distinguished *Upjohn* on a variety of grounds. But none of those purported distinctions takes this case out from under *Upjohn*'s umbrella.

*First*, the District Court stated that in *Upjohn* the internal investigation began after in-house counsel conferred with outside counsel, whereas here the investigation was conducted in-house without consultation with outside lawyers. But *Upjohn* does not hold or imply that the involvement of outside counsel is a necessary predicate for the privilege to apply. On the contrary, the general rule, which this Court has adopted, is that a lawyer's status as in-house counsel "does not dilute the privilege." *In re Sealed Case*, 737 F.2d at 99. As the Restatement's commentary points out, "Inside legal counsel to a corporation or similar organization . . . is fully empowered to engage in privileged communications." 1 RESTATEMENT § 72, cmt. c, at 551.

*Second*, the District Court noted that in *Upjohn* the interviews were conducted by attorneys, whereas here many of the interviews in KBR's investigation were conducted by non-attorneys. But the investigation here was conducted at the direction of the attorneys in KBR's Law Department. And communications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege. *See FTC v. TRW, Inc.*, 628 F.2d 207, 212 (D.C. Cir. 1980); *see also* 1 PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 7:18, at 1230-31 (2013) ("If internal investigations are conducted by agents of the client at the behest of the attorney, they are protected by the attorney-client privilege to the same extent as they would be had they been conducted by the attorney who was consulted."). So that fact, too, is not a basis on which to distinguish *Upjohn*.

*Third*, the District Court pointed out that in *Upjohn* the interviewed employees were expressly informed that the purpose of the interview was to assist the company in obtaining legal advice, whereas here they were not. The District Court further stated that the confidentiality agreements signed by KBR employees did not mention that the purpose of KBR's investigation was to obtain legal advice. Yet nothing in *Upjohn* requires a company to use magic words to its employees in order to gain the benefit of the privilege for an internal investigation. And in any event, here as in *Upjohn* employees knew that the company's legal department was conducting an investigation of a sensitive nature and that the information they disclosed would be protected. *Cf. Upjohn*, 449 U.S. at 387 (Upjohn's managers were "instructed to treat the investigation as 'highly confidential'"). KBR employees were also told not to discuss their interviews "without the specific advance authorization of KBR General Counsel." *United States ex rel. Barko v. Halliburton Co.*, No. 05-cv-1276, 2014 WL 1016784, at *3 n.33 (D.D.C. Mar. 6, 2014).

In short, none of those three distinctions of *Upjohn* holds water as a basis for denying KBR's privilege claim.

More broadly and more importantly, the District Court also distinguished *Upjohn* on the ground that KBR's internal investigation was undertaken to comply with Department of Defense regulations that require defense contractors such as KBR to maintain compliance programs and conduct internal investigations into allegations of potential wrongdoing. The District Court therefore concluded that the purpose of KBR's internal investigation was to comply with those regulatory requirements rather than to obtain or provide legal advice. In our view, the District Court's analysis rested on a false dichotomy. So long as obtaining or providing legal advice

was one of the significant purposes of the internal investigation, the attorney-client privilege applies, even if there were also other purposes for the investigation and even if the investigation was mandated by regulation rather than simply an exercise of company discretion.

The District Court began its analysis by reciting the "primary purpose" test, which many courts (including this one) have used to resolve privilege disputes when attorney-client communications may have had both legal and business purposes. *See id.* at *2; *see also In re Sealed Case*, 737 F.2d at 98-99. But in a key move, the District Court then said that the primary purpose of a communication is to obtain or provide legal advice only if the communication would not have been made "but for" the fact that legal advice was sought. 2014 WL 1016784, at *2. In other words, if there was any other purpose behind the communication, the attorney-client privilege apparently does not apply. The District Court went on to conclude that KBR's internal investigation was "undertaken pursuant to regulatory law and corporate policy rather than for the purpose of obtaining legal advice." *Id.* at *3; *see id.* at *3 n.28 (citing federal contracting regulations). Therefore, in the District Court's view, "the primary purpose of" the internal investigation "was to comply with federal defense contractor regulations, not to secure legal advice." *United States ex rel. Barko v. Halliburton Co.*, No. 05-cv-1276, 2014 WL 929430, at *2 (D.D.C. Mar. 11, 2014); *see id.* ("Nothing suggests the reports were prepared to obtain legal advice. Instead, the reports were prepared to try to comply with KBR's obligation to report improper conduct to the Department of Defense.").

The District Court erred because it employed the wrong legal test. The but-for test articulated by the District Court is not appropriate for attorney-client privilege analysis. Under

the District Court's approach, the attorney-client privilege apparently would not apply unless the sole purpose of the communication was to obtain or provide legal advice. That is not the law. We are aware of no Supreme Court or court of appeals decision that has adopted a test of this kind in this context. The District Court's novel approach to the attorney-client privilege would eliminate the attorney-client privilege for numerous communications that are made for both legal and business purposes and that heretofore have been covered by the attorney-client privilege. And the District Court's novel approach would eradicate the attorney-client privilege for internal investigations conducted by businesses that are required by law to maintain compliance programs, which is now the case in a significant swath of American industry. In turn, businesses would be less likely to disclose facts to their attorneys and to seek legal advice, which would "limit the valuable efforts of corporate counsel to ensure their client's compliance with the law." *Upjohn*, 449 U.S. at 392. We reject the District Court's but-for test as inconsistent with the principle of *Upjohn* and longstanding attorney-client privilege law.

Given the evident confusion in some cases, we also think it important to underscore that the primary purpose test, sensibly and properly applied, cannot and does not draw a rigid distinction between a legal purpose on the one hand and a business purpose on the other. After all, trying to find *the* one primary purpose for a communication motivated by two sometimes overlapping purposes (one legal and one business, for example) can be an inherently impossible task. It is often not useful or even feasible to try to determine whether the purpose was A or B when the purpose was A and B. It is thus not correct for a court to presume that a communication can have only one primary purpose. It is likewise not correct for a court to try to find *the* one primary purpose in cases where a

given communication plainly has multiple purposes. Rather, it is clearer, more precise, and more predictable to articulate the test as follows: Was obtaining or providing legal advice *a* primary purpose of the communication, meaning one of the significant purposes of the communication? As the Reporter's Note to the Restatement says, "In general, American decisions agree that the privilege applies if one of the significant purposes of a client in communicating with a lawyer is that of obtaining legal assistance." 1 RESTATEMENT § 72, Reporter's Note, at 554. We agree with and adopt that formulation – "one of the significant purposes" – as an accurate and appropriate description of the primary purpose test. Sensibly and properly applied, the test boils down to whether obtaining or providing legal advice was one of the significant purposes of the attorney-client communication.

In the context of an organization's internal investigation, if one of the significant purposes of the internal investigation was to obtain or provide legal advice, the privilege will apply. That is true regardless of whether an internal investigation was conducted pursuant to a company compliance program required by statute or regulation, or was otherwise conducted pursuant to company policy. *Cf.* Andy Liu et al., *How To Protect Internal Investigation Materials from Disclosure*, 56 GOVERNMENT CONTRACTOR ¶ 108 (Apr. 9, 2014) ("Helping a corporation comply with a statute or regulation – although required by law – does not transform quintessentially legal advice into business advice.").

In this case, there can be no serious dispute that one of the significant purposes of the KBR internal investigation was to obtain or provide legal advice. In denying KBR's privilege claim on the ground that the internal investigation was conducted in order to comply with regulatory requirements and corporate policy and not just to obtain or provide legal

advice, the District Court applied the wrong legal test and clearly erred.

## III

Having concluded that the District Court's privilege ruling constituted error, we still must decide whether that error justifies a writ of mandamus. *See* 28 U.S.C. § 1651. Mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)). In keeping with that high standard, the Supreme Court in *Cheney* stated that three conditions must be satisfied before a court grants a writ of mandamus: (1) the mandamus petitioner must have "no other adequate means to attain the relief he desires," (2) the mandamus petitioner must show that his right to the issuance of the writ is "clear and indisputable," and (3) the court, "in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.* at 380-81 (quoting and citing *Kerr v. United States District Court for the Northern District of California*, 426 U.S. 394, 403 (1976)). We conclude that all three conditions are satisfied in this case.

## A

First, a mandamus petitioner must have "no other adequate means to attain the relief he desires." *Cheney*, 542 U.S. at 380. That initial requirement will often be met in cases where a petitioner claims that a district court erroneously ordered disclosure of attorney-client privileged documents. That is because (i) an interlocutory appeal is not available in attorney-client privilege cases (absent district court certification) and (ii) appeal after final judgment will

come too late because the privileged communications will already have been disclosed pursuant to the district court's order.

The Supreme Court has ruled that an interlocutory appeal under the collateral order doctrine is not available in attorney-client privilege cases. *See Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 106-13 (2009); *see also* 28 U.S.C. § 1291. To be sure, a party in KBR's position may ask the district court to certify the privilege question for interlocutory appeal. *See* 28 U.S.C. § 1292(b). But that avenue is available only at the discretion of the district court. And here, the District Court denied KBR's request for certification. *See United States ex rel. Barko v. Halliburton Co.*, No. 05-cv-1276, 2014 WL 929430, at *1-3 (D.D.C. Mar. 11, 2014). It is also true that a party in KBR's position may defy the district court's ruling and appeal if the district court imposes contempt sanctions for non-disclosure. But as this Court has explained, forcing a party to go into contempt is not an "adequate" means of relief in these circumstances. *See In re Sealed Case*, 151 F.3d 1059, 1064-65 (D.C. Cir. 1998); *see also In re City of New York*, 607 F.3d 923, 934 (2d Cir. 2010) (same).

On the other hand, appeal after final judgment will often come too late because the privileged materials will already have been released. In other words, "the cat is out of the bag." *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998). As this Court and others have explained, post-release review of a ruling that documents are unprivileged is often inadequate to vindicate a privilege the very purpose of which is to prevent the release of those confidential documents. *See id.*; *see also In re Sims*, 534 F.3d 117, 129 (2d Cir. 2008) ("a remedy after final judgment cannot unsay the confidential

information that has been revealed") (quoting *In re von Bulow*, 828 F.2d 94, 99 (2d Cir. 1987)).

For those reasons, the first condition for mandamus – no other adequate means to obtain relief – will often be satisfied in attorney-client privilege cases. Barko responds that the Supreme Court in *Mohawk*, although addressing only the availability of interlocutory appeal under the collateral order doctrine, in effect also barred the use of mandamus in attorney-client privilege cases. According to Barko, *Mohawk* means that the first prong of the mandamus test cannot be met in attorney-client privilege cases because of the availability of post-judgment appeal. That is incorrect. It is true that *Mohawk* held that attorney-client privilege rulings are not appealable under the collateral order doctrine because "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege." 558 U.S. at 109. But at the same time, the Court repeatedly and expressly reaffirmed that *mandamus* – as opposed to the collateral order doctrine – remains a "useful safety valve" in some cases of clear error to correct "some of the more consequential attorney-client privilege rulings." *Id.* at 110-12 (internal quotation marks and alteration omitted). It would make little sense to read *Mohawk* to implicitly preclude mandamus review in all cases given that *Mohawk* explicitly preserved mandamus review in some cases. Other appellate courts that have considered this question have agreed. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010); *In re Whirlpool Corp.*, 597 F.3d 858, 860 (7th Cir. 2010); *see also In re Perez*, 749 F.3d 849 (9th Cir. 2014) (granting mandamus after *Mohawk* on informants privilege ruling); *City of New York*, 607 F.3d at 933 (same on law enforcement privilege ruling).

14

B

Second, a mandamus petitioner must show that his right to the issuance of the writ is "clear and indisputable." *Cheney*, 542 U.S. at 381. Although the first mandamus requirement is often met in attorney-client privilege cases, this second requirement is rarely met. An erroneous district court ruling on an attorney-client privilege issue by itself does not justify mandamus. The error has to be clear. As a result, appellate courts will often deny interlocutory mandamus petitions advancing claims of error by the district court on attorney-client privilege matters. In this case, for the reasons explained at length in Part II, we conclude that the District Court's privilege ruling constitutes a clear legal error. The second prong of the mandamus test is therefore satisfied in this case.

C

Third, before granting mandamus, we must be "satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. As its phrasing suggests, that is a relatively broad and amorphous totality of the circumstances consideration. The upshot of the third factor is this: Even in cases of clear district court error on an attorney-client privilege matter, the circumstances may not always justify mandamus.

In this case, considering all of the circumstances, we are convinced that mandamus is appropriate. The District Court's privilege ruling would have potentially far-reaching consequences. In distinguishing *Upjohn*, the District Court relied on a number of factors that threaten to vastly diminish the attorney-client privilege in the business setting. Perhaps most importantly, the District Court's distinction of *Upjohn*

on the ground that the internal investigation here was conducted pursuant to a compliance program mandated by federal regulations would potentially upend certain settled understandings and practices. Because defense contractors are subject to regulatory requirements of the sort cited by the District Court, the logic of the ruling would seemingly prevent any defense contractor from invoking the attorney-client privilege to protect internal investigations undertaken as part of a mandatory compliance program. *See* 48 C.F.R. § 52.203-13 (2010). And because a variety of other federal laws require similar internal controls or compliance programs, many other companies likewise would not be able to assert the privilege to protect the records of their internal investigations. *See, e.g.*, 15 U.S.C. §§ 78m(b)(2), 7262; 41 U.S.C. § 8703. As KBR explained, the District Court's decision "would disable *most public companies* from undertaking confidential internal investigations." KBR Pet. 19. As amici added, the District Court's novel approach has the potential to "work a sea change in the well-settled rules governing internal corporate investigations." Br. of Chamber of Commerce et al. as Amici Curaie 1; *see* KBR Reply Br. 1 n.1 (citing commentary to same effect); Andy Liu et al., *How To Protect Internal Investigation Materials from Disclosure*, 56 GOVERNMENT CONTRACTOR ¶ 108 (Apr. 9, 2014) (assessing broad impact of ruling on government contractors).

To be sure, there are limits to the impact of a single district court ruling because it is not binding on any other court or judge. But prudent counsel monitor court decisions closely and adapt their practices in response. The amicus brief in this case, which was joined by numerous business and trade associations, convincingly demonstrates that many organizations are well aware of and deeply concerned about the uncertainty generated by the novelty and breadth of the District Court's reasoning. That uncertainty matters in the

privilege context, for the Supreme Court has told us that an "uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981). More generally, this Court has long recognized that mandamus can be appropriate to "forestall future error in trial courts" and "eliminate uncertainty" in important areas of law. *Colonial Times, Inc. v. Gasch*, 509 F.2d 517, 524 (D.C. Cir. 1975). Other courts have granted mandamus based on similar considerations. *See In re Sims*, 534 F.3d 117, 129 (2d Cir. 2008) (granting mandamus where "immediate resolution will avoid the development of discovery practices or doctrine undermining the privilege") (quotation omitted); *In re Seagate Technology, LLC*, 497 F.3d 1360, 1367 (Fed. Cir. 2007) (en banc) (same). The novelty of the District Court's privilege ruling, combined with its potentially broad and destabilizing effects in an important area of law, convinces us that granting the writ is "appropriate under the circumstances." *Cheney*, 542 U.S. at 381. In saying that, we do not mean to imply that all of the circumstances present in this case are necessary to meet the third prong of the mandamus test. But they are sufficient to do so here. We therefore grant KBR's petition for a writ of mandamus.

IV

We have one final matter to address. At oral argument, KBR requested that if we grant mandamus, we also reassign this case to a different district court judge. *See* Tr. of Oral Arg. at 17-19; 28 U.S.C. § 2106. KBR grounds its request on the District Court's erroneous decisions on the privilege claim, as well as on a letter sent by the District Court to the Clerk of this Court in which the District Court arranged to transfer the record in the case and identified certain

documents as particularly important for this Court's review. *See* KBR Reply Br. App. 142. KBR claims that the letter violated Federal Rule of Appellate Procedure 21(b)(4), which provides that in a mandamus proceeding the "trial-court judge may request permission to address the petition but may not do so unless invited or ordered to do so by the court of appeals."

In its mandamus petition, KBR did not request reassignment. Nor did KBR do so in its reply brief, even though the company knew by that time of the District Court letter that it complains about. Ordinarily, we do not consider a request for relief that a party failed to clearly articulate in its briefs. To be sure, appellate courts on rare occasions will reassign a case sua sponte. *See Ligon v. City of New York*, 736 F.3d 118, 129 & n.31 (2d Cir. 2013) (collecting cases), *vacated in part*, 743 F.3d 362 (2d Cir. 2014). But whether requested to do so or considering the matter sua sponte, we will reassign a case only in the exceedingly rare circumstance that a district judge's conduct is "so extreme as to display clear inability to render fair judgment." *Liteky v. United States*, 510 U.S. 540, 551 (1994); *see also United States v. Microsoft Corp.*, 253 F.3d 34, 107 (D.C. Cir. 2001) (en banc). Nothing in the District Court's decisions or subsequent letter reaches that very high standard. Based on the record before us, we have no reason to doubt that the District Court will render fair judgment in further proceedings. We will not reassign the case.

\* \* \*

In reaching our decision here, we stress, as the Supreme Court did in *Upjohn*, that the attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United*

*States*, 449 U.S. 383, 395 (1981). Barko was able to pursue the facts underlying KBR's investigation. But he was not entitled to KBR's own investigation files. As the *Upjohn* Court stated, quoting Justice Jackson, "Discovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary." *Id.* at 396 (quoting *Hickman v. Taylor*, 329 U.S. 495, 515 (1947) (Jackson, J., concurring)).

Although the attorney-client privilege covers only communications and not facts, we acknowledge that the privilege carries costs. The privilege means that potentially critical evidence may be withheld from the factfinder. Indeed, as the District Court here noted, that may be the end result in this case. But our legal system tolerates those costs because the privilege "is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (quoting *Upjohn*, 449 U.S. at 389).

We grant the petition for a writ of mandamus and vacate the District Court's March 6 document production order. To the extent that Barko has timely asserted other arguments for why these documents are not covered by either the attorney-client privilege or the work-product protection, the District Court may consider such arguments.

*So ordered.*