**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE GRAND JURY. | Nos. 21-55085<br>21-55145<br><br>D.C. Nos.<br>2:20-cm-00046-UA-1<br>2:18-cm-01758-UA-1<br><br>ORDER AND<br>AMENDED OPINION |

Appeal from the United States District Court
for the Central District of California
John Kronstadt, District Judge, Presiding

Argued and Submitted June 7, 2021
Pasadena, California

Filed September 13, 2021
Amended January 27, 2022

Before:  Mary H. Murguia, Bridget S. Bade, and
Kenneth K. Lee, Circuit Judges.

Order;
Opinion by Judge Lee

# SUMMARY[*]

## Grand Jury Subpoenas

The panel affirmed the district court's orders holding appellants, a company and a law firm, in contempt for failure to comply with grand jury subpoenas related to a criminal investigation, in a case in which the district court ruled that certain dual-purpose communications were not privileged because the "primary purpose" of the documents was to obtain tax advice, not legal advice.

Appellants argued that the district court erred in relying on the "primary purpose" test and should have instead relied on a broader "because of" test. Under the "primary purpose" test, courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or tax advice. The "because of" test—which typically applies in the work-product context—considers the totality of the circumstances and affords protection when it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation. The panel rejected appellants' invitation to extend the "because of" test to the attorney-client privilege context, and held that the "primary purpose" test applies to dual-purpose communications.

The panel left open whether this court should adopt "*a* primary purpose" instead of "*the* primary purpose" as the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

test, as the D.C. Circuit did in *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014). The panel wrote that *Kellogg*'s reasoning in the very specific context of corporate internal investigations does not apply with equal force in the tax context, and that the disputed communications in this case do not fall within the narrow universe where the *Kellogg* test would change the outcome of the privilege analysis.

The panel addressed remaining issues in a concurrently filed, sealed memorandum disposition.

**COUNSEL**

Thomas F. Carlucci (argued), Foley & Lardner LLP, San Francisco, California; Evan J. Davis (argued), Hochman Salkin Toscher Perez P.C., Beverly Hills, California; for Movants-Appellants.

Mark S. Determan (argued) and Joseph B. Syverson, Attorneys; S. Robert Lyons, Chief, Criminal Appeals & Tax Enforcement Policy Section; David A. Hubbert, Acting Assistant Attorney General; Tracy Wilkison, Acting United States Attorney; Tax Division, United States Department of Justice, Washington, D.C.; for Plaintiff-Appellee.

Laura L. Buckley, Higgs Fletcher & Mack, San Diego, California; Kevan P. McLaughlin, McLaughlin Legal APC, San Diego, California; for Amicus Curiae Executive Committee on the Taxation Section of the California Lawyers Association.

Jenny Johnson Ware, McDermott Will & Emery LLP, Chicago, Illinois, for Amicus Curiae American College of Tax Counsel.

---

**ORDER**

The Opinion filed on September 13, 2021, is amended as follows:

On slip opinion page 12, footnote 5, replace <tax advice> with <tax return preparation assistance>.

The Clerk shall file the amended opinion submitted with this Order.

Appellants' Petitions for Panel Rehearing and Rehearing En Banc (Dkt. No. 65) are otherwise **DENIED**. No further petitions for rehearing may be filed. Appellants' motion to unseal the petitions and the amicus briefs (Dkt. No. 66) is **DENIED** as moot.

---

**OPINION**

LEE, Circuit Judge:

Given our increasingly complex regulatory landscape, attorneys often wear dual hats, serving as both a lawyer and a trusted business advisor. Our court, however, has yet to articulate a consistent standard for determining when the attorney-client privilege applies to dual-purpose communications that implicate both legal and business concerns.

In this case, the grand jury issued subpoenas related to a criminal investigation. The district court held Appellants—whom we identify as "Company" and "Law Firm"—in contempt after they failed to comply with the subpoenas. The district court ruled that certain dual-purpose communications were not privileged because the "primary purpose" of the documents was to obtain tax advice, not legal advice. Appellants argue that the district court erred in relying on the "primary purpose" test and should have instead relied on a broader "because of" test. We affirm and conclude that the primary-purpose test governs in assessing attorney-client privilege for dual-purpose communications.[1]

## BACKGROUND

Company and Law Firm were each served with grand jury subpoenas requesting documents and communications related to a criminal investigation. The target of the criminal investigation is the owner of Company as well as a client of Law Firm. In response to the grand jury subpoenas, Company and Law Firm each produced some documents but withheld others, citing attorney-client privilege and the work-product doctrine.

The government moved to compel production of the withheld documents, which the district court granted in part. In those orders, the district court explained that these documents were either not protected by any privilege or were discoverable under the crime-fraud exception. Company and Law Firm disagreed with the district court's privilege rulings, so they continued to withhold the disputed

---

[1] This opinion only addresses the issue of dual-purpose communications. The remaining issues on appeal are resolved in a concurrently filed, sealed memorandum disposition.

documents.  The government followed up with motions to hold Company and Law Firm in contempt, both of which the district court again granted.  These appeals followed, and we have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

Whether the attorney-client privilege applies to specific documents represents "a mixed question of law and fact which this court reviews independently and without deference to the district court."  *United States v. Richey*, 632 F.3d 559, 563 (9th Cir. 2011) (cleaned up).  The district court's legal rulings about the scope of the privilege are reviewed de novo.  *Id.*  So is the district court's choice of the applicable legal standard.  *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985).  We review the district court's factual findings for clear error.  *Richey*, 632 F.3d at 563.

## ANALYSIS

**I.   District Courts in Our Circuit Have Applied Both the "Primary Purpose" and "Because Of" Tests for Attorney-Client Privilege Claims for Dual-Purpose Communications.**

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."  *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020).  Generally, communications related to an attorney's preparation of tax returns are not covered by attorney-client privilege.  *Olender v. United States*, 210 F.2d 795, 806 (9th Cir. 1954).  So, for example, "a client may communicate the figures from his W-2 Form to an attorney while litigation is in progress, but this information certainly is not privileged."

*United States v. Abrahams*, 905 F.2d 1276, 1283–84 (9th Cir. 1990), *overruled on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997). On the other hand, if a client seeks a lawyer's legal advice to figure out what to claim on a tax return, then that advice may be privileged. *Abrahams*, 905 F.2d at 1284.

But some communications might have more than one purpose, especially "in the tax law context, where an attorney's advice may integrally involve both legal and non-legal analyses." *Sanmina*, 968 F.3d at 1118. *Sanmina*, for example, involved communications about the propriety of a particular tax deduction, which could have both a non-legal purpose (tax compliance considerations) as well as potentially a legal purpose (seeking advice on what to do if the IRS challenged the deduction). *Id*. at 1117–18.

When dual-purpose communications are involved, there are two potential tests that courts have adopted: the "primary purpose" test and the "because of" test. Under the "primary purpose" test, courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or tax advice. *See In re County of Erie*, 473 F.3d 413, 420 (2d Cir. 2007) ("We consider whether the predominant purpose of the communication is to render or solicit legal advice."). The natural implication of this inquiry is that a dual-purpose communication can only have a single "primary" purpose.

On the other hand, the "because of" test—which typically applies in the work-product context—"does not consider whether litigation was a primary or secondary motive behind the creation of a document." *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004). It instead "considers the totality of the circumstances and affords protection when it can fairly be

said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *Id.* (cleaned up).  It is a broader test than the "primary purpose" test because it looks only at causal connection, and not a "primary" reason. *See Visa U.S.A., Inc. v. First Data Corp.*, No. C-02-1786JSW(EMC), 2004 WL 1878209, at \*4 (N.D. Cal. Aug. 23, 2004).  In the attorney-client privilege context, the "because of" test might thus ask whether a dual-purpose communication was made "because of" the need to give or receive legal advice.

As the *Sanmina* court recently noted, the Ninth Circuit has not explicitly adopted either the "primary purpose" test or the "because of" test in determining whether dual-purpose communications are entitled to attorney-client privilege. *Sanmina*, 968 F.3d at 1118.[2]  And *Sanmina* itself declined to resolve this issue because the district court there had made a factual finding that the communications were not dual-purpose.  *Id.* at 1119.  Without guidance from our court, district courts in this circuit have split, applying both tests for attorney-client privilege claims.  *Id.* at 1118 n.5 (summarizing district court cases).

---

[2] The government suggests that dual-purpose communications in the tax advice context can never be privileged, but we reject that argument. The case law, at least in the Ninth Circuit, does not go so far.  *See Abrahams*, 905 F.2d at 1284 (holding that attorney-client privilege might apply to legal advice about what to claim on a tax return, even if it does not apply to the numbers themselves).  *But see United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999) ("Put differently, a dual-purpose document—a document prepared for use in preparing tax returns and for use in litigation—is not privileged. . . .").

## II. The Primary-Purpose Test Applies to Dual-Purpose Communications in the Attorney-Client Privilege Context.

Because this case squarely involves dual-purpose communications, we now answer the question that *Sanmina* left open. We hold that the primary-purpose test applies to attorney-client privilege claims for dual-purpose communications.

To start, the "interpretation of the privilege's scope is guided by 'the principles of the common law . . . as interpreted by the courts . . . in the light of reason and experience.'" *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (quoting Fed. R. Evid. 501). At common law, the attorney-client privilege extends only to communications made "for the purpose of facilitating the rendition of professional legal services." *See United States v. Rowe*, 96 F.3d 1294, 1296 (9th Cir. 1996) (citation omitted); Restatement (Third) of the Law Governing Lawyers § 68 (Am. L. Inst. 2000) (stating that communication must be "for the purpose of obtaining or providing legal assistance for the client" to qualify for protection under attorney-client privilege). Thus, the "client must consult the lawyer for the purpose of obtaining legal assistance and not predominantly for another purpose." Restatement, *supra*, § 72 cmt. c; *see Swidler & Berlin*, 524 U.S. at 406–07 (discussing scholarly commentary in describing the contours of privilege at common law). As the Supreme Court has recognized, the attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *See Fisher v. United States*, 425 U.S. 391, 403 (1976) (citation omitted). Thus, the scope of the attorney-client privilege is defined by the purpose of the

communication consistent with the common law. *See Swidler & Berlin*, 524 U.S. at 410–11; Fed. R. Evid. 501.

Appellants assert, however, that we should instead borrow the test from the work-product doctrine when a communication has a dual purpose. In Appellants' view, the attorney-client privilege should apply "when it can be fairly said that the document was created because of anticipated litigation and would not have been created in substantially similar form but for the prospect of that litigation." *See In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004) (describing when work-product doctrine applies). Appellants thus ask us to depart from the holdings of most courts and adopt a new test for attorney-client privilege—at least in the context of dual-purpose communications. But, as in *Swidler & Berlin*, Appellants offer no persuasive reason to abandon the common-law rule, 524 U.S. at 410–11, which focuses on the purpose of the communication, not its relation to anticipated litigation. While the dual-purpose nature of Law Firm's representation can complicate the analysis of whether the communication was made to obtain legal advice, we see no reason to tinker with the privilege's scope and deviate from its common-law form to accommodate that concern.

While the attorney-client privilege and work-product doctrine are typically mentioned together, attorney-client privilege and the work-product protection doctrine are animated by different policy goals. It thus makes sense to have different tests for the two. *See id.* at 404–05 (discussing policy rationale behind common-law scope of privilege in declining to adjust privilege's scope).

In the work-product context, the concern is "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free

from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (cleaned up). In short, the work-product doctrine upholds the fairness of the adversarial process by allowing litigators to creatively develop legal theories and strategies—without their adversaries invoking the discovery process to pry into the litigators' minds and free-ride off them. *See, e.g.*, *Allen v. Chi. Transit Auth.*, 198 F.R.D. 495, 500 (N.D. Ill. 2001) (explaining that the intent of the work-product doctrine "is to protect the adversarial process by providing an environment of privacy" and insure "that the litigator's opponent is unable to ride on the litigator's wits"). Given this goal, it makes sense to have a broader "because of" test that shields lawyers' litigation strategies from their adversaries.

In contrast, the attorney-client privilege encourages "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Unlike the work-product doctrine, the privilege is not necessarily tied to any adversarial process, and it is not so much concerned with the fairness of litigation as it is with providing a sanctuary for candid communication about any legal matter, not just impending litigation. Applying a broader "because of" test to attorney-client privilege might harm our adversarial system if parties try to withhold key documents as privileged by claiming that they were created "because of" litigation concerns. Indeed, it would create perverse incentives for companies to add layers of lawyers to every business decision in hopes of insulating themselves from scrutiny in any future litigation. Because of these different aims, it makes sense to apply different tests for the attorney-client privilege and the work-product doctrine. *See*

*Sanmina*, 968 F.3d at 1120 ("[W]ork-product protection is not as easily waived as the attorney-client privilege based on the distinct purposes of the two privileges." (cleaned up)).

Further, Appellants only point to two district court cases to support their position, but most, if not all, of our sister circuits that have addressed this issue have opted for some version of the "primary purpose" test instead of the "because of" test.[3]  *See Swidler & Berlin*, 524 U.S. at 404 (rejecting invitation to change scope of privilege from its common law form after noting that majority view tracked common law). The great weight of the authority goes against Appellants' position, which counsels against adopting it.

In sum, we reject Appellants' invitation to extend the "because of" test to the attorney-client privilege context, and hold that the "primary purpose" test applies to dual-purpose communications.

## III.  We Leave Open Whether the "A Primary Purpose Test" Should Apply.

Even if the "primary purpose test" applies here, Appellants argue that we should adopt "*a* primary purpose" as the test instead of "*the* primary purpose," relying on the D.C. Circuit's decision in *In re Kellogg Brown & Root, Inc.*,

---

[3] *See County of Erie*, 473 F.3d at 420 ("We consider whether the predominant purpose of the communication is to render or solicit legal advice."); *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (requiring communication to be made "for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding" (cleaned up)); *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 572–73 (6th Cir. 2015) (applying primary purpose test); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014).

756 F.3d 754 (D.C. Cir. 2014).  The D.C. Circuit articulated its version of the primary-purpose test: "Was obtaining or providing legal advice a primary purpose of the communication, meaning one of the significant purposes of the communication?"  *Id.* at 760.  As *Kellogg* explained, "trying to find the one primary purpose for a communication motivated by two sometimes overlapping purposes (one legal and one business, for example) can be an inherently impossible task" because, often, it is "not useful or even feasible to try to determine whether the purpose was A or B when the purpose was A and B."  *Id.* at 759.

In the eyes of the *Kellogg* court, "the primary purpose test, sensibly and properly applied, cannot and does not draw a rigid distinction between a legal purpose on the one hand and a business purpose on the other."  *Id.*  Even though it theoretically sounds easy to isolate "the primary or predominant" purpose of a communication, the exercise can quickly become messy in practice.  That was the case in *Kellogg* in which the company conducted an internal investigation for both legal (*e.g.*, to obtain legal advice) *and* business reasons (*e.g.*, to comply with regulatory requirements and corporate policy).  A test that focuses on *a* primary purpose instead of *the* primary purpose would save courts the trouble of having to identify a predominate purpose among two (or more) potentially equal purposes.

We see the merits of the reasoning in *Kellogg*.  But we see no need to adopt that reasoning in this case.  None of our other sister circuits have openly embraced *Kellogg* yet.[4]  We

---

[4] That said, some district courts have adopted *Kellogg*'s "significant purpose" analysis.  *See In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 530 (S.D.N.Y. 2015) ("To be sure, the D.C. Circuit's decision in *Kellogg Brown & Root* is not binding on this Court.

also recognize that *Kellogg* dealt with the very specific context of corporate internal investigations, and its reasoning does not apply with equal force in the tax context.[5]  Nor are we persuaded that the facts here require us to reach the *Kellogg* question.  Moreover, the universe of documents in which the *Kellogg* test would make a difference is limited.  The *Kellogg* test would only change the outcome of a privilege analysis in truly close cases, like where the legal purpose is just as significant as a non-legal purpose.  Because the district court did not clearly err in finding that *the* predominate purpose of the disputed communications was not to obtain legal advice, they do not fall within the narrow universe where the *Kellogg* test would change the outcome of the privilege analysis.  *See Sanmina*, 968 F.3d at 1119 (affirming the district court's finding about the purpose of a communication because it was not clearly erroneous).

---

Nevertheless, its analysis of the 'primary purpose' test as applied to internal investigations in the corporate setting is consistent with the Second Circuit's analysis in *County of Erie* . . . ."); *In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prods. Liab. Litig.*, No. 1:17-md-2775, 2019 WL 2330863, at *2 (D. Md. May 31, 2019); *Edwards v. Scripps Media, Inc.*, No. 18-10735, 2019 WL 2448654, at *1–2 (E.D. Mich. June 10, 2019).

[5] We are aware, for example, that normal tax return preparation assistance—even coming from lawyers—is generally *not* privileged, and courts should be careful to not accidentally create an accountant's privilege where none is supposed to exist.  *See Frederick*, 182 F.3d at 500 ("There is no common law accountant's or tax preparer's privilege, and a taxpayer must not be allowed, by hiring a lawyer to do the work that an accountant, or other tax preparer, or the taxpayer himself or herself, normally would do, to obtain greater protection from government investigators than a taxpayer who did not use a lawyer as his tax preparer would be entitled to." (cleaned up)).  Thus, it is not clear whether a more protective version of the primary-purpose test is appropriate in this context.

We thus see no need to adopt or apply the *Kellogg* formulation of the primary-purpose test here.

## CONCLUSION

The district court's orders holding Company and Law Firm in contempt are **AFFIRMED**.[6]

---

[6] The motion for immediate issuance of the mandate [Dkt. 60] is **DENIED**.