# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 14, 2014       Decided February 20, 2015

No. 12-5393

FEDERAL TRADE COMMISSION,
APPELLANT

v.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-mc-00564)

---

*Mark S. Hegedus*, Attorney, Federal Trade Commission, argued the cause for appellant. With him on the briefs were *Jonathan E. Nuechterlein*, General Counsel, *David C. Shonka*, Principal Deputy General Counsel, *John F. Daly*, Deputy General Counsel for Litigation, and *Leslie Rice Melman*, Assistant General Counsel for Litigation. *David L. Sieradzki*, Attorney, entered an appearance.

*Lawrence D. Rosenberg* argued the cause for appellee. With him on the brief was *Michael Sennett*.

Before: ROGERS, GRIFFITH and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: In 2009, the Federal Trade Commission initiated an antitrust investigation into a patent settlement agreement between Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer"), a brand-name pharmaceutical company, and Barr Industries ("Barr"), a generic drug manufacturer. As part of its investigation, the FTC issued an administrative subpoena seeking various documents relating to the settlement. When Boehringer failed to comply, the FTC initiated an enforcement proceeding in the District Court for the District of Columbia. *See FTC v. Boehringer Ingelheim Pharm., Inc.*, 286 F.R.D. 101 (D.D.C. 2012). Although Boehringer ultimately certified compliance with the subpoena, it withheld hundreds of responsive documents under the work product doctrine and the attorney-client privilege. After the FTC objected, the District Court reviewed *in camera* a sample of the contested documents, and found that almost all were properly withheld under the work product doctrine or the attorney-client privilege. On appeal, the FTC challenges the District Court's application of the work product doctrine.

The FTC first asserts that the District Court erred as a matter of law when it concluded that settlement documents pertaining to a co-promotion agreement between Boehringer and Barr were prepared "in anticipation of litigation," as required under the work product doctrine. According to the FTC, this conclusion cannot be reconciled with Boehringer's representation that the co-promotion agreement involved payment for other services apart from Barr's agreement to dismiss the patent litigation. We reject the FTC's argument and hold that a settlement term may have independent economic value and still be considered part of a settlement for purposes of work product protection. In addition, we find that the District Court reasonably concluded that the bulk of the contested co-promotion materials were prepared "in

anticipation" of the Boehringer-Barr litigation. The sole exception is a small group of documents drafted *after* the settlement was executed, which the District Court did not explicitly address. Accordingly, we generally affirm the District Court's findings on this issue but remand for further consideration with respect to the post-settlement documents.

The FTC next argues that the District Court committed legal error by applying an overly expansive definition of "opinion" work product, which is highly protected, as opposed to "fact" work product, which is substantially less so. Because we agree that the District Court misapprehended the proper distinction between fact and opinion work product, we reverse and remand on this issue.

## I.

Boehringer manufactures Aggrenox and Mirapex, two patented pharmaceutical drugs that earn hundreds of millions of dollars in U.S. sales each year. In 2005, Barr sought and received FDA approval to market generic versions of these drugs, which led Boehringer to sue Barr for patent infringement. *See Boehringer Ingelheim Int'l GmbH v. Barr Labs. Inc.*, Civ. Action No. 05-700-JJF (D. Del. filed Sept. 26, 2005). Barr, in turn, contended that Boehringer's patents were invalid. While the Delaware litigation was pending, Boehringer and Barr entered into settlement negotiations. Boehringer's senior vice president and general counsel, Marla Persky, served as its lead negotiator during these discussions. FTC Investig. Hr'g Tr. at 70-71, J.A. 755-56. To this end, Persky and her staff engaged in both legal and business activities, including evaluating possible litigation outcomes, considering potential antitrust concerns, and evaluating and negotiating the business terms of the settlement. *Id*. at 113-16, 118, 120-23, J.A. 772-80.

On August 11, 2008, the two companies settled their dispute on the following terms: Barr would refrain from marketing its generic versions of Aggrenox and Mirapex in the immediate future, but Boehringer would permit Barr to enter the market several months ahead of the expiration of Boehringer's patents. *Boehringer*, 286 F.R.D at 105; *see also* Aggrenox Settlement Agreement, J.A. 871-83; Press Release, J.A. 886-88. In the meantime, under a related co-promotion agreement, Barr would help Boehringer promote Aggrenox to medical professionals in exchange for certain specified fees and royalties on Aggrenox sales. *Boehringer*, 286 F.R.D at 105; *see also* Co-Promotion Agreement, J.A. 889-930.

While this type of settlement deal is not necessarily unlawful, *see FTC v. Actavis, Inc.*, 133 S. Ct. 2223, 2237-38 (2013), such a settlement may be subject to antitrust scrutiny if it appears that the patent-holding firm – here, Boehringer – was using the co-promotion agreement as a vehicle to avoid legitimate competition. *Id.* at 2236-37. And, indeed, the specific terms of this settlement raised the suspicions of the FTC that Boehringer was simply paying Barr off in order to delay the entry of generics into the market. *Boehringer*, 286 F.R.D at 105. The FTC initiated an investigation and served Boehringer with a subpoena *duces tecum*. *Id.* After Boehringer failed to meet a deadline for production, the FTC filed a petition in district court for an order enforcing the subpoena. *Id.*

Boehringer ultimately completed production and certified compliance with the subpoena, although it withheld nearly a quarter of identified responsive documents as protected by the attorney-client privilege, the work product doctrine, or both. *Id.* at 106. The FTC was not satisfied with Boehringer's response and objected that many of the withheld documents fell outside the scope of these privileges. *Id.* It specifically

challenged Boehringer's refusal to produce documents containing financial analyses of the Aggrenox co-promotion agreement, forecasting analyses of alternative time lines for generic entry into the market, and financial analyses of the business terms of the settlement agreement. *Id*. at 108. The FTC also challenged Boehringer's withholding of several other categories of documents not at issue in this appeal. *See id*. at 112 (discussing emails, notes, and reports on strategic decisions and other issues; emails containing legal advice or requests for legal advice; transmittal emails; and duplicate documents); Appellant's Br. 12-16 (limiting challenge on appeal to financial documents analyzing litigation settlement and co-promotion agreement).

By agreement of the parties, Boehringer submitted a sample set of documents *in camera* to the District Court. *Boehringer*, 286 F.R.D at 106. After reviewing the documents, the District Court issued a decision largely upholding Boehringer's work product claims. *Id*. at 108-12.

The District Court first explained why the financial analyses and forecasts fell within the scope of the work product doctrine. It began by observing that work product developed for the purpose of settling a lawsuit falls within the scope of materials prepared "in anticipation of litigation," as required under Rule 26. *Boehringer*, 286 F.R.D. at 107, 109; *see* FED. R. CIV. P. 26(b)(3) (protecting from disclosure materials "prepared in anticipation of litigation"). The documents analyzing litigation outcomes and the settlement terms were, therefore, plainly work product. *Boehringer*, 286 F.R.D. at 109. As for the co-promotion agreement materials, the court found that the co-promotion agreement was "integral" to the global settlement deal and therefore also belonged in the class of materials prepared in anticipation of litigation. *Id*.

The District Court next considered whether the materials sought were fact work product, which may be discovered under certain circumstances, or opinion work product, which is subject to strict protection. *Id*. at 109-10. It found that although the materials resembled financial reports that might be prepared in the standard course of business, the specific reports were prepared using "information and frameworks" provided by Boehringer counsel and reflected, at minimum, counsel's opinions as to what data were important in determining an acceptable settlement. *Id*. at 109. On these grounds, the District Court concluded that the materials constituted opinion work product, deserving of the utmost protection. *Id*. at 110. The District Court further found that the FTC had not demonstrated the sort of "overriding and compelling" need required to pierce opinion work product protection. *Id*. at 109-10. Because the District Court found that the documents were wholly protected under the work product doctrine, it did not reach Boehringer's attorney-client privilege claims with respect to any of these financial documents. *See id.*

The FTC contends that the District Court erred in two ways. It first argues that the District Court failed to properly consider whether many of these materials – particularly, the financial analyses of the Aggrenox co-promotion agreement and materials produced after the settlement agreement was executed – actually were prepared "in anticipation of litigation." It next asserts that even if all of the contested documents are work product, then they are, at most, *fact* work product and therefore may be discovered by the FTC upon a showing of substantial need and undue hardship.

## II.

We review a district court's decision to enforce an administrative subpoena for abuse of discretion. *See U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 253 (D.C. Cir. 2005). A district court necessarily abuses its discretion if it applies the incorrect legal standard, a question that is reviewed *de novo*. *See Conservation Force v. Salazar*, 699 F.3d 538, 542 (D.C. Cir. 2012); *FTC v. Church & Dwight Co.*, 665 F.3d 1312, 1315 (D.C. Cir. 2011).

A district court's factual findings are reviewed for clear error. *Boca Investerings P'ship v. United States*, 314 F.3d 625, 629 (D.C. Cir. 2003). A finding is clearly erroneous, even where there is record evidence to support it, if "the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Awad v. Obama*, 608 F.3d 1, 6-7 (D.C. Cir. 2010) (internal quotation marks omitted).

## III.

## A.

The Supreme Court first articulated the federal work product doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947), where it was asked to define the reach of the pre-trial deposition and discovery mechanisms established by the then-new Federal Rules of Civil Procedure. These rules, which required each party "to disgorge whatever [relevant, non-privileged] facts he has in his possession," dramatically expanded the scope of pre-trial discovery. *Id*. at 507. Under a literal reading of the Rules, a party would be entitled to discover any non-privileged trial preparation materials, such

as attorney notes from witness interviews, created by his opponent in that litigation. *See id.* at 506.

The Supreme Court rejected this literal reading, holding that compelled disclosure of attorney work product would "contravene[] the public policy underlying the orderly prosecution and defense of legal claims." *Id.* at 510. The Court explained that in performing one's duties as a lawyer:

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.

*Id.* at 510-11. Readily compelling the disclosure of such work product to opposing counsel would lead to "[i]nefficiency, unfairness and sharp practices." *Id.* at 511.

*Hickman* clarified that discovery of an attorney's work materials was permitted only in limited circumstances. *Id.* A party seeking such materials must establish "adequate reasons to justify production through subpoena or court order," and even then, discovery is limited to "relevant and non-privileged *facts*." *Id.* at 511-12 (emphasis added).

*Hickman* was later codified in substantial part in Rule 26(b)(3) of the Federal Rules. Rule 26 provides that a party generally may not discover "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" FED. R. CIV. P. 26(b)(3)(A). Such discovery is permissible, however, if "the party shows that it has substantial need for the materials to

prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," so long as counsel's "impressions, conclusions, opinions, or legal theories" are not disclosed. FED. R. CIV. P. 26(b)(3)(A)-(B); *see* FED. R. CIV. P. 81(a)(5) (providing that the Federal Rules apply to proceedings to enforce an administrative subpoena).

The work product protection is broader than the attorney-client privilege in that it is not restricted solely to confidential communications between an attorney and client. *In re Sealed Case*, 676 F.2d 793, 808-09 (D.C. Cir. 1982). It is narrower, however, insofar as the doctrine protects only work performed in anticipation of litigation or for trial. *See Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987) ("The work product doctrine does not extend to every written document generated by an attorney . . . rather, work product covers only documents prepared in contemplation of litigation.") (internal quotation marks omitted). A document prepared as work product for one lawsuit will retain its protected status even in subsequent, unrelated litigation. *See FTC v. Grolier Inc.*, 462 U.S. 19, 27-28 (1983); *In re Murphy*, 560 F.2d 326, 333-35 (8th Cir. 1977) (holding that materials prepared for patent settlement retained work product protection in subsequent antitrust litigation).

**B.**

**1.**

When considering whether a document is prepared "in anticipation of litigation," this Court employs a "because of" test, inquiring "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Deloitte LLP,*

610 F.3d 129, 137 (D.C. Cir. 2010) (internal quotation marks omitted); *accord* 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2024, at 502 (3d ed. 2010).  Where a document would have been created "in substantially similar form" regardless of the litigation, work product protection is not available.  *Deloitte*, 610 F.3d at 138 (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)).

The FTC does not challenge the District Court's ruling that documents created by Boehringer for the purpose of settling the patent infringement litigation are protected work product.  It takes issue, however, with the District Court's finding that the materials relating to the co-promotion agreement fall within the category of protected settlement documents.

The FTC points out that Boehringer has represented that the co-promotion agreement, despite being part of the litigation settlement, was a "fair arms-length business arrangement" that had independent economic value apart from the litigation settlement.  April 6, 2010 Letter from Boehringer counsel to the FTC, J.A. 577; FTC Investig. Hr'g Tr. 112-13, J.A. 991-92.  The FTC contends that the purported "arms-length" nature of the co-promotion agreement logically compels a finding that the related documents would have been created "in substantially similar form" irrespective of the patent infringement litigation.  Appellant's Br. 21, 33-41.  According to the FTC, Boehringer may not point to the independence of the co-promotion agreement from the litigation settlement for purposes of its antitrust defense while relying on the interdependence of these agreements to avoid discovery.

We find no merit in the proposition that any settlement term that has some independent economic value to both

parties must always be treated as an ordinary (non-litigation) business transaction for purposes of work product protection. Common sense and practical experience teach that settlement deals routinely include arrangements that could be isolated from the overall agreement and stand on their own but were nonetheless crafted for the purpose of settling litigation. Indeed, the Supreme Court's refusal in *Actavis* to hold reverse payment settlement agreements presumptively unlawful anticipates that a reverse payment could "represent payment" for "other services" aside from a party's agreement to end litigation yet still be part of the settlement. 133 S. Ct. at 2237.

Upon our review of the record, we find no clear error in the District Court's factual finding that the co-promotion agreement was "integral" to the broader settlement. *Boehringer*, 286 F.R.D. at 109. Accordingly, the District Court did not err in drawing the legal conclusion that the co-promotion agreement materials were prepared "in anticipation of" the patent litigation and were therefore entitled to work product protection.

The FTC posits that our ruling on this point could lead to gamesmanship by counsel in future cases. It imagines a scenario in which parties engaged in litigation settlement discussions could tack on an unrelated side deal for the purpose of evading regulatory scrutiny. *See* Appellant's Reply Br. 12-13, 17. While we do not have occasion to rule on such facts, we note that the work product doctrine is "an intensely practical one, grounded in the realities of litigation in our adversary system." *United States v. Nobles*, 422 U.S. 225, 238 (1975). We do not reach the question of whether the work product protection is available in the hypothetical situation where settlement terms run far afield of the

underlying litigation, or where there is evidence, not present here, of gamesmanship or abuse.[1]

**2.**

The FTC also raises a temporal objection to many of the withheld documents. It notes that the District Court characterized the documents as having been prepared "to assess settlement option[s]." *Boehringer*, 286 F.R.D. at 109. This finding is inconsistent with the dates on many documents (including at least eight submitted *in camera*) that were prepared *after* the settlement agreement was executed. *See* Index of Challenged Entries at 36, J.A. 703.

Boehringer concedes that many documents were created after settlement negotiations concluded. *See* Appellee's Br. 15. It asserts, however, that these materials contain information initially prepared in anticipation of the settlement, related to other pending litigation, or involving requests for or the provision of legal advice. *Id*. While Boehringer articulates potentially viable grounds for protection, these grounds are not the reasons articulated by the District Court, which characterized all of the documents as having been created in anticipation of the Boehringer-Barr litigation and settlement. *Boehringer*, 286 F.R.D. at 109. We therefore remand for consideration of whether these documents were, in fact, created in anticipation of litigation.[2]

---

[1] Because we find that the documents are protected, we do not reach Boehringer's alternative argument that the co-promotion agreement materials are protected because counsel used them to evaluate potential antitrust liability.

[2] The FTC also suggests that documents created *prior* to the commencement of settlement negotiations cannot be related to the

## C.

As noted, Rule 26 distinguishes between *opinion* work product, which reveals "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," and *fact* work product, which does not. FED. R. CIV. P. 26(b)(3)(B); *see In re Sealed Case*, 124 F.3d 230, 235-36 (D.C. Cir. 1997), *rev'd on other grounds sub nom. Swidler & Berlin v. United States*, 524 U.S. 399 (1998). The District Court, after reviewing financial analysis documents submitted *in camera*, concluded that the documents contained information that, while primarily factual in nature, gave insight into the highly protected mental impressions of counsel. *Boehringer*, 286 F.R.D. at 109-10. Specifically, it found that the documents revealed not only what data the attorneys were seeking, but also "information and frameworks" developed by counsel. *Id.* at 109. On this basis, it ruled that the documents contained only opinion work product and fact product inextricably intertwined with counsel's opinions and thus were wholly protected from disclosure. *Id.* at 110.

The FTC argues that the District Court applied an overly broad definition of opinion work product. After carefully reviewing the materials submitted *in camera* and the record as a whole, we agree.

When a factual document selected or requested by counsel exposes the attorney's thought processes and theories, it may be appropriate to treat the document as opinion work product, even though the document on its face contains only

settlement. Appellant's Br. 6, 33. We find no merit to this proposition. To the contrary, one would expect a company's attorneys to discuss settlement strategy internally before entering into negotiations with opposing counsel.

facts. *See Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) ("At some point . . . a lawyer's factual selection reflects his focus; in deciding what to include and what to omit, the lawyer reveals his view of the case."). At the same time, however, "not every item which may reveal some inkling of a lawyer's mental impressions . . . is protected as opinion work product." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988). Opinion work product protection is warranted only if the selection or request reflects the attorney's focus in a meaningful way. *See Dir., Office of Thrift Supervision*, 124 F.3d at 1308; *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d at 1015 (heightened protection is triggered only if "disclosure creates a real, nonspeculative danger of revealing the lawyer's thoughts"). And where a document contains both opinion and fact work product, the court must examine whether the factual matter may be disclosed without revealing the attorney's opinions. *See Deloitte*, 610 F.3d at 139 (remanding case to district court to assess whether a redacted version of a document containing opinion work product could be disclosed); *In re Sealed Case*, 146 F.3d 881, 888 (D.C. Cir. 1998) (same).

In *Sealed Case* (1997), for example, we held that attorney notes of preliminary interviews with a witness were not necessarily opinion work product, as the mere fact that an attorney had chosen to write a fact down was not sufficient to convert that fact into opinion work product. 124 F.3d at 236-37. Rather, there must be some indication that the lawyer "sharply focused or weeded the materials." *Id*. at 236. After *in camera* review of the documents in that case revealed that much of the information contained therein "could be classified as opinion only on a virtually omnivorous view of the term," we reversed and remanded to the district court for reexamination. *Id*. at 236-37.

15

As in *Sealed Case*, many of the documents at issue here contain only factual information requested or selected by counsel. Much of what the FTC seeks is factual information produced by non-lawyers that, while requested by Ms. Persky and other attorneys, does not reveal any insight into counsel's legal impressions or their views of the case.

In holding to the contrary, the District Court implied that an attorney's mere request for a document was sufficient to warrant opinion work product protection. In discussing financial reports, the court noted that the reports were "prepared at the behest of [Boehringer] attorneys," who requested the use of "certain data." *Boehringer*, 286 F.R.D. at 110. The District Court further noted that "[r]evealing the data chosen for this analysis would necessarily reveal the attorneys' mental impressions, including, at a bare minimum, that the attorneys believed such analyses of that data was [sic] necessary or important to determining an appropriate settlement." *Id*.

As is plain from the District Court's decision, the materials in the joint appendix, and Boehringer's *in camera* submissions, however, counsel's requests were often general and routine. And indeed, the District Court noted that the documents requested by the FTC are "the sort of financial analyses one would expect a company exercising due diligence to prepare when contemplating settlement options." *Id*. In many documents, the only mental impression that can be discerned is counsel's general interest in the financials of the deal. But such interest reveals nothing at all: anyone familiar with such settlements would expect a competent negotiator to request financial analyses like those performed here, and Boehringer does not attempt to hide this interest in its briefs. There is no "real, nonspeculative danger of revealing the lawyer's thoughts" when the thoughts are

already well-known. *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d at 1015.

Moreover, as Ms. Persky observed in her testimony before the FTC, questions about whether the agreements made financial sense were a matter of business judgment, not legal counsel. *See* FTC Investig. Hr'g Tr. at 68, J.A. 590. In fact, the financial parameters of an acceptable settlement were provided by Boehringer's board of directors and its business managers. *Id.* A company may select an executive who is a lawyer to negotiate the business terms of a settlement; this does not mean that the lawyer's thoughts relating to financial and business decisions are opinion work product when she is simply parroting the thoughts of the business managers.

The District Court also reasoned that many of the documents were created using specific "information and frameworks" provided by Boehringer counsel. *Boehringer*, 286 F.R.D. at 109. In many documents, however, the "information and frameworks" provided have no legal significance. For example, in several documents, the "frameworks" provided by counsel are simply time frames for requested financial data – for example, forecasting in *x*-month intervals. Boehringer posits that disclosing these time frames could reveal something of legal significance, but it has failed to explain how. Where an attorney's mental impressions are those that "a layman would have as well as a lawyer in these particular circumstances, and in no way reveal anything worthy of the description 'legal theory,'" those impressions are not opinion work product. *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 11 (D.D.C. 2008) (quoting *In re John Doe Corp.*, 675 F.2d 482, 493 (2d Cir. 1982)).

Where it appears that the focus or framework provided by counsel is obvious or non-legal in nature, it is incumbent upon

the party claiming opinion work product protection to explain specifically how disclosure would reveal the attorney's legal impressions and thought processes. The District Court failed to demand such a showing from Boehringer and instead concluded categorically that the contested documents were highly protected opinion work product. This was error.

**D.**

**1.**

The District Court's error matters because, as noted, a party's ability to discover work product often turns on whether the withheld materials are fact work product or opinion work product. A party generally must make an "extraordinary showing of necessity" to obtain opinion work product. *In re Sealed Case*, 676 F.2d at 811; *see also Dir., Office of Thrift Supervision*, 124 F.3d at 1307 (observing that opinion work product is "virtually undiscoverable"). By contrast, "[t]o the extent that work product contains relevant, nonprivileged *facts*," the work product doctrine "merely shifts the standard presumption in favor of discovery and requires the party seeking discovery to show 'adequate reasons' why the work product should be subject to discovery." *In re Sealed Case*, 676 F.2d at 809 (emphasis added) (quoting *Hickman*, 329 U.S. at 512). This "adequate reasons" test corresponds to Rule 26(b)(3)'s requirement, adopted in 1970, that a party seeking fact work product demonstrate that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii); *see In re Sealed Case*, 676 F.2d at 809 n.59.

The District Court, believing that the contested documents contained only opinion work product or facts

inextricably intertwined with legal opinions, confined its inquiry to whether the FTC had demonstrated an "overriding and compelling need" for those materials and concluded that it had not. *Boehringer*, 286 F.R.D. at 109-10. Because the FTC does not claim that it is entitled to opinion work product, we have no occasion to consider whether the District Court applied the correct standard for evaluating when opinion work product immunity may be pierced.

On the other hand, the FTC does contend that it is entitled to any facts that can be reasonably excised from counsel's legal opinions and mental processes. Because it is the duty of the District Court to consider whether the FTC had met the less demanding standard for fact work product, *see* FED. R. CIV. P. 26(b)(3)(A)(ii), the customary next step would be to remand the case to allow the District Court to make this determination in the first instance.

Each party contends, however, that we have what we need to decide whether the FTC has met the Rule 26(b)(3) standard in that party's favor, based on other findings made by the District Court. Boehringer points specifically to the District Court's observation that the documents contain "no smoking guns" and are "not in any way evidence of any conspiratorial intent to violate the law." Appellee's Br. 54 (quoting *Boehringer*, 286 F.R.D. at 110). This statement, Boehringer argues, is "fatal" to the FTC's claim of need. *Id*. Boehringer's theory seems to be that a party "needs" fact work product only if the materials are critical to, or dispositive of, a key issue at trial.

We find no merit in Boehringer's argument, for two reasons. First, although some courts have demanded a heightened showing of a document's relevance or probative value for discovery of fact work product, *see Logan v.*

*Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996), we have never characterized Rule 26(b)(3)'s "substantial need" requirement in this manner. *See*, *e.g.*, *Dir., Office of Thrift Supervision*, 124 F.3d at 1308; *In re Sealed Case*, 676 F.2d at 809-10. Nor is such an approach consistent with the 1970 amendments to Rule 26 or the case law that they codified, as we explain below. Second, even if a heightened relevance requirement were appropriate during discovery in a typical post-complaint civil lawsuit, such a rule would be misplaced in the investigatory context of an agency subpoena enforcement proceeding. *See Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1512 (D.C. Cir. 1993); *FTC v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C. Cir. 1977) (en banc).

The FTC, on the other hand, maintains that the District Court implicitly determined that the FTC had satisfied the "substantial need" and "undue hardship" requirements. Because the District Court found that the financial documents are relevant to the FTC's investigation and would provide unique information that the FTC cannot reasonably obtain elsewhere, and because we detect no error in this finding, we agree with the FTC. We discuss each of these points in turn.

**2.**

The meaning of Rule 26(b)(3)'s "substantial need" requirement is not clear from the plain language of the rule. *Cf. Pierce v. Underwood*, 487 U.S. 552, 563-64 (1988) (discussing the ambiguity implicit in the term "substantial" while interpreting 28 U.S.C. § 2412(d)(1)(A)); *see also A.I.A. Holdings, S.A. v. Lehman Bros.*, Civ. Action No. 97-4978, 2000 WL 1639417, at *2 (S.D.N.Y. Nov. 1, 2000) (noting that "[t]he law is not well developed as to what constitutes 'substantial need'"); Special Project, *The Work Product*

*Doctrine*, 68 CORNELL L. REV. 760, 802 (1983) ("The substantial need requirement is the least uniformly applied by the courts."). Helpfully, the Advisory Committee's notes on the amendments "provide a reliable source of insight into the meaning of a rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed." *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002) (interpreting FED. R. CRIM. P. 11(h)).

The "substantial need" and "undue hardship" requirements were added to Rule 26(b)(3) in an attempt to clarify and codify the tests developed by the Supreme Court in *Hickman* and by the lower courts construing former Rule 34's "good cause" provision. *See* FED. R. CIV. P. 26(b)(3) advisory committee's note to 1970 Amendments (hereinafter Advisory Committee's Notes), *reproduced at* 48 F.R.D. 487, 500-01; *see also In re Sealed Case*, 676 F.2d at 810 n.59; WRIGHT ET AL., *supra*, § 2023, at 489 (characterizing Rule 26(b)(3) as "a largely accurate codification of the doctrine announced in the *Hickman* case and developed in later cases in the lower courts"). The Committee explained that the amendments were intended to require an inquiry into "the importance of and need for" the fact work product at issue, as well as "alternative sources for securing the same information." Advisory Committee's Notes, 48 F.R.D. at 500. The Committee did not further define the "substantial need" and "undue hardship" concepts.

The Committee did provide guidance, however, by pointing to four cases that had demanded a "special showing" to obtain trial preparation materials; it explained that the new "substantial need" and "undue hardship" requirements reflected the holdings of those cases. *Id.* (citing *Guilford Nat'l Bank v. Southern Ry.*, 297 F.2d 921 (4th Cir. 1962); *Mitchell v. Bass*, 252 F.2d 513 (8th Cir. 1958); *Hauger v.*

*Chicago, R.I. & Pac. R.R.*, 216 F.2d 501 (7th Cir. 1954); *Burke v. United States*, 32 F.R.D. 213 (E.D.N.Y. 1963)).  The Committee also approved of a list of circumstances under which witness statements could be discoverable, as recited in a fifth case, *Southern Ry.* v. *Lanham*, 403 F.2d 119 (5th Cir. 1968).  Advisory Committee's Notes, 48 F.R.D. at 501.[3]

These cases indicate that a moving party's burden is generally met if it demonstrates that the materials are relevant to the case, the materials have a unique value apart from those already in the movant's possession, and "special circumstances" excuse the movant's failure to obtain the requested materials itself.  *See Mitchell*, 252 F.2d at 518-19 (permitting discovery of opponent's witness statements where witnesses refused to speak with movant); *Burke*, 32 F.R.D. at 215 (permitting discovery of accident report materials where information contained therein was otherwise unavailable); *cf. Hauger*, 216 F.2d at 505-06 (finding no "special circumstances" warranting disclosure of witness statements where plaintiff had deposed those same witnesses, and

---

[3] Each of these cases involved factual work product prepared by non-attorneys.  *See Lanham*, 403 F.2d at 126-27 (claim agents); *Hauger*, 216 F.2d at 506 (agents); *Mitchell*, 252 F.2d at 518 (investigators); *Guilford*, 297 F.2d at 922 (claim agent); *Burke*, 32 F.R.D. at 214 (post office personnel).  Although *Hickman* did not expressly apply to work product prepared by non-lawyers, these courts required a special showing for such materials under Rule 34's "good cause" provision.  *See*, *e.g.*, *Mitchell*, 252 F.2d at 518-19; *Guilford*, 297 F.2d at 927; *but see Hauger*, 216 F.2d at 506-07 (finding "no logical basis" for distinguishing between statements taken by counsel and a counsel's agent and therefore applying both Rule 34 and *Hickman*).  The 1970 amendments abolished the distinction between factual materials prepared by counsel and those prepared by non-attorneys.  FED. R. CIV. P. 26(b)(3)(A); *see Nobles*, 422 U.S. at 254 n.16.

plaintiff's purported need for materials for purposes of impeachment was speculative); *Guilford*, 297 F.2d at 923-27 (finding no "special circumstances" where plaintiff possessed substantially similar materials and impeachment value was speculative).  A list of special circumstances was provided in *Lanham*, where the Fifth Circuit observed that a contemporaneous witness statement typically would be discoverable if the witness was unavailable, reluctant, or hostile, or if the witness had a lapse of memory or deviated from prior statements.  403 F.2d at 128-31.

Although each of these cases mentioned the relevance of the requested documents, none articulated a requirement that the documents be essential to the claim or probative of a critical element.  The Advisory Committee notably did not cite any of the then-existing decisions demanding a heightened showing of relevance.  *Compare Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 558 (2d Cir. 1967) (requiring party seeking fact work product to demonstrate that the documents were "essential to the preparation of [movant's] case on [a] critical issue" in the litigation).  Boehringer's argument that factual work product is discoverable only if it contains a "smoking gun" therefore has no basis in the Committee notes or the cases cited therein.

The Advisory Committee also observed that the substantial need and undue hardship requirements corresponded to the showing required under *Hickman*, *see* Advisory Committee's Notes, 48 F.R.D. at 501, which further supports the conclusion that no heightened showing of relevance is required.  *Hickman* instructed that fact work product that is unavailable elsewhere may be discovered if it is admissible or could "give clues as to the existence or location of relevant facts" – a standard remarkably similar to the relevance standard under Rule 26(b)(1).  *Hickman*, 329

U.S. at 511; *see* FED. R. CIV. P. 26(b)(1) (evidence is relevant if admissible or "appears reasonably calculated to lead to the discovery of admissible evidence"). Indeed, a mere relevance requirement is consonant with *Hickman*'s statement that "[m]utual knowledge of *all* the relevant facts gathered by both parties is essential to proper litigation." 329 U.S. at 507 (emphasis added).

Of course, this interest in liberal discovery must be balanced against the key goal underlying the protection for fact work product: that each side must undertake its own investigation of the relevant facts and not simply freeload on opposing counsel. *See Guilford*, 297 F.2d at 926 (work product rule serves to prevent a less-than-diligent litigant from "perform[ing] its functions either without wits or on wits borrowed from the adversary") (quoting *Hickman*, 329 U.S. at 516 (Jackson, J., concurring)); *Nat'l Union Fire Ins. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 985 (4th Cir. 1992) (characterizing the substantial need and undue hardship requirements primarily as "an 'anti-freeloader' rule designed to prohibit one adverse party from riding to court on the enterprise of the other"). But neither of these competing interests is served when unique, relevant information is withheld from a party that never had an opportunity to obtain the information on its own. The "substantial need" inquiry requires a careful examination of whether non-disclosure will impair the truth-seeking function of discovery. *See Dir., Office of Thrift Supervision*, 124 F.3d at 1308 (finding no substantial need for fact work product where movant already possessed similar materials). A moving party need not show, however, that the requested documents are critical to, or dispositive of, the issues to be litigated.[4]

---

[4] There has been a ratcheting up of the "substantial need" standard in recent years by some courts, due at least in part to a conflation of

**3.**

Boehringer's argument for a "smoking gun" standard is problematic for a second reason. Even if such a requirement were justified in the context of a typical civil proceeding – where the scope of the charges are clear – such a rule would be misplaced in the investigatory context here. We have previously observed that in an administrative subpoena enforcement proceeding, "[t]he district court is not free to speculate about the possible charges that might be included in a future complaint, and then to determine the relevance of the subpoena requests by reference to those hypothetical charges." *Texaco*, 555 F.2d at 874. In undertaking this investigation, the FTC is "merely exercising its legitimate

---

what is sufficient and what is necessary to demonstrate need. For example, in *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235 (5th Cir. 1982), the fact work product sought related to an "essential element" of plaintiff's claims; the Fifth Circuit noted that this "could be grounds for a finding of substantial need," but did not hold that such a finding was required. *Id.* at 1241. This "essential element" language nevertheless was incorporated into the legal standard articulated by a popular treatise, *see* 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.70[5][c], at 26-457 to 26-459 (3d ed. 2009), and has been applied by district courts, *see*, *e.g.*, *Fletcher v. Union Pac. R.R. Co.*, 194 F.R.D. 666, 672 (S.D. Cal. 2000) (finding no substantial need for surveillance videos because they were not "essential to [plaintiff]'s prima facie case"); *see also Nat'l Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000) (collecting cases where materials sought were "essential" to party's defense, were "crucial" to determination of liability, or carried "great probative value on contested issues"); *Nevada v. J-M Mfg. Co.*, 555 F. App'x 782, 785 (10th Cir. 2014) (relying on *National Congress* and the cases cited therein as providing minimum standards and denying discovery of fact work product because movant failed to show that the evidence "carr[ied] great probative value").

right to determine the facts" and to decide whether a complaint should issue. *Id.*; *see also Linde Thomson*, 5 F.3d at 1512 ("An investigation conducted by the [FTC] may conceivably neither culminate in litigation, nor be initially designed to inspire it."). If the District Court is correct that the contested materials reveal an absence of conspiratorial intent, then the materials nevertheless may be helpful to the FTC in determining whether to issue a complaint in the first place.

**4.**

We turn to the FTC's argument that the District Court implicitly found that the FTC had met the "substantial need" and "undue hardship" requirements. When it decided not to require Boehringer to disclose facts contained in the financial analyses and forecasts, the District Court based this decision on its misplaced belief that the information could not be disclosed without revealing protected legal opinions and attorney thought processes. The District Court never suggested that the FTC had failed to make the requisite showing for factual work product.

To the contrary, the District Court stated that it was "sympathetic to the FTC's argument that these financial analyses are the only documents that could demonstrate whether or not [Boehringer] was using the co-promotion agreement to pay Barr not to compete." *Boehringer*, 286 F.R.D. at 110. The District Court then credited the FTC's argument with respect to the emails that accompanied the financial documents, and it directed Boehringer to produce "factual work product that can be reasonably excised from any indication of opinion work product." *Id.* We agree with the FTC that this ruling makes clear that the District Court found that the FTC had shown a substantial need and undue

hardship for materials relating to financial analyses and forecasts. And although Boehringer asserts that the FTC possesses equivalent documents or could reproduce similar analyses on its own, none of these arguments are persuasive. As the District Court indicated, Boehringer's contemporaneous financial evaluations provide unique information about Boehringer's reasons for settling in the manner that it did. *Id*.; *see also United States v. Brown Univ.*, 5 F.3d 658, 671-72 (3d Cir. 1993) (considering evidence of party's intent when assessing the likely antitrust effects of the challenged conduct); *Guilford*, 297 F.2d at 926 (noting the special value of contemporaneous witness accounts).

We therefore will remand to the District Court to revisit the financial documents in light of the correct legal standards, as clarified above. The District Court should determine which of the sampled documents may be produced, in full or in redacted form, as factual work product. To the extent that any such documents were withheld in whole or in part on the alternative basis of attorney-client privilege, the District Court will have to determine whether this privilege independently bars discovery.[5]

---

[5] In its opening brief, the FTC asserts that the District Court abused its discretion in accepting and relying on *in camera*, *ex parte* affidavits. *See* Appellant's Br. 53-58. But the FTC is precluded from raising this issue on appeal, as it presented no explanation for its failure to object, much less "exceptional circumstances" to excuse its failure. *Marymount Hosp., Inc. v. Shalala*, 19 F.3d 658, 663 (D.C. Cir. 1994) (noting that arguments not made below generally are deemed waived). We therefore decline to consider this issue.

## IV.

For the foregoing reasons, we vacate in part, affirm in part, and remand for further proceedings consistent with this opinion.

*So ordered.*