# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 15, 2017      Decided June 19, 2018

No. 16-5356

FEDERAL TRADE COMMISSION,
APPELLANT

v.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,
APPELLEE

———

Consolidated with 16-5357

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:09-mc-00564)

———

*Mark S. Hegedus*, Attorney, Federal Trade Commission, argued the cause for appellant. With him on the briefs were *David C. Shonka*, Acting General Counsel, and *Joel Marcus*, Deputy General Counsel for Litigation.

*Lawrence D. Rosenberg* argued the cause for appellee. With him on the briefs were *Michael Sennett* and *Nicole C. Henning*.

*John P. Elwood*, *Zachary J. Howe*, *Kate Comerford Todd*, *Sheldon Gilbert*, and *Amar D. Sarwal* were on the brief for

*amicus curiae* Chamber of Commerce of the United States of America and Association of Corporate Counsel in support of Boehringer Ingelheim Pharmaceuticals, Inc. *Warren D. Postman* entered an appearance.

Before: KAVANAUGH and PILLARD, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Circuit Judge* PILLARD and *Senior Circuit Judge* RANDOLPH join.

Concurring opinion filed by *Circuit Judge* PILLARD.

KAVANAUGH, *Circuit Judge*: The pharmaceutical company Boehringer claimed attorney-client privilege over certain documents subpoenaed by the Federal Trade Commission. The attorney-client privilege applies to a communication between attorney and client if at least "one of the significant purposes" of the communication was to obtain or provide legal advice. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014). Under that standard, the attorney-client privilege applies to the documents at issue here. We affirm the judgment of the District Court.

I

A drug manufacturer that holds a patent has a market advantage. When a generic drug company challenges the validity of that patent, it threatens the patent holder's monopoly. Such a challenge can result in a settlement in which the patent holder pays the challenger to drop the challenge. That scenario is known as a "reverse payment" settlement – so labeled because the settlement requires the

patent holder to "pay the alleged infringer, rather than the other way around." *FTC v. Actavis, Inc.*, 570 U.S. 136, 141 (2013).

In *Actavis*, the Supreme Court analyzed the legality of reverse payments. If the payments are made simply to avoid litigation costs, they may be lawful. But if "the basic reason is a desire to maintain and to share patent-generated monopoly profits," then "the antitrust laws are likely to forbid the arrangement." *Id.* at 158.

In 2008, a patent negotiation occurred between Boehringer (the name brand with the patent) and Barr (the generic seeking to challenge the patent). Ultimately, the parties reached a reverse payment settlement.

The Federal Trade Commission pays close attention to reverse payment settlements to ensure that they do not run afoul of antitrust law. In 2009, the Commission began investigating the Boehringer-Barr settlement. During the investigation, the Commission subpoenaed documents from Boehringer. Boehringer claimed that the subpoenaed documents were created by Boehringer employees for Boehringer's general counsel, Marla Persky, at her request. The documents allowed Persky to analyze and navigate the treacherous antitrust issues surrounding reverse payment settlements. Other documents reflected communications between Persky and Boehringer executives regarding the possible settlement. Boehringer asserted attorney-client privilege over the documents.

The burden is on the proponent of the privilege to demonstrate that it applies. *See United States v. Legal Services for New York City*, 249 F.3d 1077, 1081 (D.C. Cir. 2001). In a thorough and careful opinion, the District Court agreed with Boehringer that the documents at issue here are covered by the attorney-client privilege. To the extent the

Commission challenges the legal test employed by the District Court, our review is de novo. To the extent the Commission challenges the facts found by the District Court, our review is for clear error.

II

As relevant here, the attorney-client privilege applies to a confidential communication between attorney and client if the communication was made for the purpose of obtaining or providing legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383 (1981); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014). The privilege covers both (i) those communications in which an attorney gives legal advice; and (ii) those communications in which the client informs the attorney of facts that the attorney needs to understand the problem and provide legal advice.

In the corporate context, the attorney-client privilege applies to communications between corporate employees and a corporation's counsel made for the purpose of obtaining or providing legal advice. The privilege applies regardless of whether the attorney is in-house counsel or outside counsel.

The application of the attorney-client privilege can become more complicated when a communication has multiple purposes – in particular, a legal purpose and a business purpose. In this case, for example, the communications had a legal purpose: to help the company ensure compliance with the antitrust laws and negotiate a lawful settlement. But the communications also had a business purpose: to help the company negotiate a settlement on favorable financial terms.

In a situation like this where a communication has multiple purposes, courts apply the "primary purpose" test to determine

whether the communication is privileged.  *See Kellogg*, 756 F.3d at 759.  In *Kellogg*, this Court recently explained that courts applying the primary purpose test should not try "to find *the* one primary purpose" of a communication.  Attempting to do so "can be an inherently impossible task" when the communications have "overlapping purposes (one legal and one business, for example)."  *Id.*  "It is often not useful or even feasible to try to determine whether the purpose was A or B when the purpose was A and B."  *Id.*  Rather, courts applying the primary purpose test should determine "whether obtaining or providing legal advice was *one of* the significant purposes of the attorney-client communication."  *Id.* at 760 (emphasis added); *see* 1 RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 72, Reporter's Note, at 554 (2000).

Our approach to this issue, as we explained in *Kellogg*, helps to reduce uncertainty regarding the attorney-client privilege.  Reducing uncertainty is important in the privilege context because, as the Supreme Court has stated, an "uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."  *Upjohn*, 449 U.S. at 393.

In this case, the question therefore is whether obtaining or providing legal advice was one of the significant purposes of the communications at issue.   The answer is yes.

The relevant communications consist primarily of the transmission of factual information from Boehringer's employees to the general counsel, at the general counsel's request, for the purpose of assisting the general counsel in formulating her legal advice regarding a possible settlement. Other communications were between the general counsel and the corporation's executives regarding the settlement.  All of those communications are protected by the attorney-client

privilege because one of the significant purposes of the communications was "obtaining or providing legal advice" – namely, settlement and antitrust advice. *Kellogg*, 756 F.3d at 758.

To be sure, the communications at issue here also served a business purpose. The decision whether and at what price to settle ultimately was a business decision as well as a legal decision for Boehringer. But as we stated in *Kellogg*, what matters is whether obtaining or providing legal advice was one of the significant purposes of the attorney-client communications. Here, as the District Court correctly concluded, one of the significant purposes of these communications was to obtain or provide legal advice. It follows that Boehringer's general counsel was acting as an attorney and that the communications are privileged.

In so ruling, we emphasize that the attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn*, 449 U.S. at 395. In this case, therefore, the attorney-client privilege did not and does not prevent the FTC's discovery of the underlying facts and data possessed by Boehringer and its employees. Nor did it prevent the FTC's discovery of pre-existing business documents. But the attorney-client privilege does protect the *communication* of facts by corporate employees to the general counsel when, as here, the communications were for the purpose of obtaining or providing legal advice. As the *Upjohn* Court noted, discovery "was hardly intended to enable a learned profession to perform its functions . . . on wits

borrowed from the adversary." *Id.* at 396 (quoting *Hickman v. Taylor*, 329 U.S. 495, 516 (1947)).[1]

\* \* \*

In its landmark decision in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), the Supreme Court explained the importance of the attorney-client privilege in the business context: The "vast and complicated array of regulatory legislation" requires corporations to "constantly go to lawyers to find out how to obey the law . . . particularly since compliance with the law in this area is hardly an instinctive matter." *Id.* at 392. So it was in this case. We affirm the judgment of the District Court.

*So ordered.*

---

[1] For a few documents sought by the FTC, Boehringer asserted only the work product privilege and not the attorney-client privilege. This Court's prior decision in this case analyzed the work product issue. *FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 778 F.3d 142 (D.C. Cir. 2015). On remand, the District Court applied that decision. In a cross-appeal in this case, Boehringer challenges the District Court's decision on the work product privilege. But Boehringer forthrightly recognizes that this panel is bound by the prior panel's decision. Boehringer's real beef is with the prior decision. We find no reversible error in the District Court's application of our prior decision.

PILLARD, *Circuit Judge*, *concurring*: I agree with the opinion of the court as far as it goes. I write separately to emphasize why the spare elegance of the court's opinion should not be mistaken for an expansion of the attorney-client privilege recognized in our prior precedents: In short, the district court engaged extensively with the disputed documents and the bases for the privilege claims, and followed certain truncated procedures only with the parties' consent.

As an exception from the general presumption in favor of discovery, the "attorney-client privilege must be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Lindsey*, 158 F.3d 1263, 1272 (D.C. Cir. 1998) (quoting *In re Sealed Case*, 676 F.2d 793, 807 n.44 (D.C. Cir. 1982)); *see* 1 Paul R. Rice, Attorney-Client Privilege in the U.S. § 2:3. The party asserting attorney-client privilege must prove that "each communication" sought to be withheld merits the privilege. *United States v. Legal Servs. for N.Y.C.*, 249 F.3d 1077, 1081-82 (D.C. Cir. 2001) (rejecting unparticularized assertion of attorney client privilege); *see* Attorney-Client Privilege in the U.S. § 11:11. Under settled law, the burden of establishing that privilege applies rests with the party claiming it. *See* Op. 3; *Legal Servs. for N.Y.C.*, 249 F.3d at 1081-82; *Lindsey*, 158 F.3d at 1270; *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) [hereafter *Sealed Case* (1984)]; *FTC v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980). The proponent must, that is, show that a "significant" purpose of every individual "communication" for which it asserts privilege is to secure or provide "legal advice." *See In re Kellogg Brown & Root*, 756 F.3d 754, 759-60 (D.C. Cir. 2014); *Sealed Case* (1984), 737 F.2d at 98-99.

Clients claiming privilege may seek to shield information supplied in confidence to their lawyers. When a client's confidences are a "significant and inseparable part" of the lawyer's advice, they are protected as they appear within privileged communications between lawyer and client. *Sealed*

*Case* (1984), 737 F.2d at 99. As the court emphasizes, however, the attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." Op. 6 (quoting *Upjohn Co. v. United Stated*, 449 U.S. 383, 395 (1981)).

The FTC does not dispute the status of the documents as "communications" between lawyer and client, Oral Argument Tr. at 12, instead focusing on the magistrate judge's conclusion that Boehringer had met its burden to show that the communications at issue had a significant legal purpose. Where a privilege claimant has closely intertwined purposes— a legal purpose as well as a business purpose—it must still establish to a "reasonable certainty," *Sealed Case* (1984), 737 F.2d at 99, that "obtaining or providing legal advice was one of the significant purposes" animating each communication withheld, *Kellogg Brown & Root*, 756 F.3d at 758-59. Neither a general statement that the lawyer wore both lawyer and businessperson "hats" during the communications nor a blanket assertion of legal purpose is enough. *See Sealed Case* (1984), 737 F.3d at 99; *Lindsey*, 158 F.3d at 1270. Nor is it sufficient to offer as support privilege logs with bare, conclusory assertions that the listed communications were made for the purpose of securing legal advice. *See Legal Servs. for N.Y.C.*, 249 F.3d at 1081-82; *accord Equal Employment Opportunity Commission v. BDO USA, LLP*, 876 F.3d 690, 696 (5th Cir. 2017). The claimant must instead "present to the court sufficient facts to establish the privilege" so that the court is in a position independently to review the legal-purpose assertion for each relevant communication. *Sealed Case* (1984), 737 F.2d at 99.

The magistrate judge, having personally "reviewed *in camera* all the documents at issue," found that Boehringer met

that considerable burden in this case. *FTC v. Boehringer Ingelheim Pharm., Inc.*, 180 F. Supp. 3d 1, 6 (D.D.C. 2016). That decision is not clearly erroneous. The burden-of-proof issue is, to be sure, somewhat obscured on this record because of the special process the parties adopted. In response to the FTC's 2009 subpoena, Boehringer initially produced approximately 9,500 documents to the FTC and withheld approximately 2,400 on the basis of work-product protection and/or attorney-client privilege. *See* Appellee Br. at 14. The FTC challenged the application of those shields to over 600 documents listed in Boehringer's privilege log. *Id.* Faced with hundreds of disputed documents, a magistrate judge in 2011 ordered Boehringer to choose a representative sample of documents for *in camera* review. *See FTC v. Boehringer Ingelheim Pharm., Inc.*, 286 F.R.D. 101, 106 (D.D.C. 2012); Oral Argument Tr. at 31. Boehringer submitted a supporting affidavit with specific explanations of its claims of privilege for each of the documents in the sample. Sealed App'x 473-85. At oral argument, Boehringer explained—and the FTC did not contest—that Boehringer offered to supplement or amend the original privilege logs to provide more support for its privilege assertions. The FTC passed on that offer. *See* Oral Argument Tr. at 31-32, 42.

In light of our 2015 decision in this case clarifying the standard for work-product protection, *see FTC v. Boehringer Ingelheim Pharmaceuticals*, 778 F.3d 142 (D.C. Cir. 2015), the magistrate judge on remand reviewed not only residual work product claims but also assertions that documents we held not protected as work product were nonetheless privileged attorney-client communications, *see Boehringer*, 180 F. Supp. 3d 1. Boehringer again offered to supplement the record with additional briefing and *ex parte* affidavits, but the court held that no additional materials were necessary or appropriate. *See id*. at 22-23, 28. In view of the parties' original briefing on

attorney-client privilege, the sample documents reviewed *in camera*, and the record, which included Boehringer's supporting *ex parte* affidavit and its privilege logs, the court sustained Boehringer's claims of attorney-client privilege. It determined that Boehringer offered more than conclusory assertions that each of the disputed communications had a legal purpose and, after confirming those assertions through its own review of the documents, credited Boehringer's contention that obtaining legal advice was a significant purpose animating each communication. *Id.* at 29-30.

The court enjoys considerable discretion in making that determination in the first instance, and we owe its fact-finding appreciable deference. *See Boehringer*, 778 F.3d at 148; Fed. R. Civ. P. 52(a)(6) ("Findings of fact . . . must not be set aside unless clearly erroneous."). Because I see no clear error in the district court's finding, I concur.